## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50341
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 18, 2015

Lyle W. Cayce
Clerk

ALFRED ORTIZ, III,

      Plaintiff - Appellant

v.

CITY OF SAN ANTONIO FIRE DEPARTMENT,

      Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Plaintiff Alfred Ortiz, III, works for defendant City of San Antonio Fire Department ("SAFD"). He appeals a grant of summary judgment in favor of SAFD on his claims for (1) employment discrimination in violation of the Genetic Information Nondiscrimination Act ("GINA"), (2) retaliation in violation of GINA, and (3) national origin discrimination in violation of Title VII of the Civil Rights Act of 1964. Finding no reversible error, we AFFIRM.

### I. Background

Ortiz began working for SAFD over thirty years ago, first as a firefighter and then as a paramedic. Since 2002, the collective bargaining agreement

No. 15-50341

between firefighters and the City of San Antonio has provided for a "mandatory wellness program for all employees," to be approved by the union and the City. As explained below, Ortiz's primary complaint is the mandatory nature of the program eventually adopted.

In December 2010, SAFD announced a "Wellness Program" mandatory for "all uniformed employees." That program is "designed to provide early detection of serious medical conditions and encourage better health, thereby allowing . . . employees to do their job more safely and effectively." Under the Wellness Program, SAFD provides to each employee a free and comprehensive "job-related medical evaluation." An employee may, at his own expense, have his personal physician conduct the examination instead. The required examination includes a medical history; a "complete physical examination"; blood and urine tests; and tests for vision, hearing, and lung capacity. SAFD also requires a chest X-ray every five years as well as a stress test and "Prostate-Specific Antigen" testing for employees over the age of forty.

If an employee is not certified fit for his position's essential duties, the Wellness Program provides that he is to be placed on "Alternate Duty," and that SAFD "will work closely with the employee and the Wellness Physician to expedite a return to full duty status." An employee can also be placed on temporary "Conditional Full Duty" under some circumstances. An SAFD official describes alternate duty as "administrative detail," and the general order outlining the Wellness Program describes alternate duties as "non-operational." After sixty days, employees on alternate duty are no longer eligible for overtime.

On June 23, 2011, SAFD Emergency Medical Services personnel, including Ortiz, received an email regarding upcoming physicals. In a letter to the Fire Chief one month later, Ortiz wrote that he did not want to participate in the Wellness Program and did not wish "to allow release of [his]

2

Personal Protected Health information to any entity without [his] express written consent."[1]  Ortiz was then asked to explain why he did not want to participate.  In a second letter written eight days later, Ortiz stated that he was seeking "clarification as to the constitutionality of releasing [his] personal 'protected' health information to any entity, without 'cause' and without [his] expressed  written consent."  He requested "additional time to meet with [his] lawyer . . . before subjecting [himself] to the physical and lab work."

In early 2012, SAFD compiled a list of all uniformed employees who had not yet complied with the Wellness Program.  This list included Ortiz, who was placed on alternate duty in February 2012.  One week later, Ortiz submitted paperwork from a physical conducted by his personal physician, and he was immediately returned to regular duty.

Ortiz's physician did not administer the mandatory stress test because, in that physician's opinion, it was not necessary.  On April 13, 2012, when SAFD learned that Ortiz had not taken a stress test and refused to submit to one, he was again placed on alternate duty.  The official who placed Ortiz on administrative detail avers that the placement was "based only on [Ortiz's] failure to comply with" the Wellness Program.  After nine months of alternate duty, Ortiz submitted results of a stress test to SAFD and was returned to regular duty.

As evidence of disparate treatment, Ortiz submitted a declaration by Brian McEnery, a Battalion Chief with SAFD.  McEnery declared that, during a physical administered pursuant to the Wellness Program, he refused to answer whether high blood pressure ran in his family because he "viewed that

---

[1] Ortiz misstates the record when he characterizes this letter and portions of his deposition testimony as expressing a refusal to allow SAFD to collect his "family medical history pursuant to the GINA."  Neither the letter nor the cited deposition testimony mentions GINA or family medical history.  And Ortiz has not pointed to any record evidence that he was required to provide family medical history.

[question] as a violation of GINA." The examining physician nevertheless certified McEnery as fit for "full duty." During another annual physical, McEnery was told that he needed to take a stress test or be placed on conditional or alternate duty. McEnery declares that although he was told he would have to complete a stress test, he "was not placed on administrative duty for [his] refusal to take a stress test or [his] refusal to provide information [he] believed was in violation of GINA"; indeed, he was promoted.

Record evidence indicates that McEnery was placed on conditional duty due to his failure to take a stress test, but that he was never placed on administrative duty because his primary duties were already "administrative in nature," and because SAFD was awaiting a decision on an EEOC complaint McEnery had filed challenging the Wellness Program. SAFD also submitted evidence that McEnery's promotion was made pursuant to the collective bargaining agreement, and was not discretionary. According to SAFD official Noel T. Horan, the only other uniformed employee besides Ortiz and McEnery who failed to fully comply with the Wellness Program's physical requirement was also placed on alternate duty.

In February 2012, Ortiz filed a union grievance concerning his first placement on alternate duty. He filed a second union grievance in April of that year, when he was told that his physical did not satisfy the Wellness Program because it did not include a stress test. On April 13, 2012, Ortiz filed an EEOC complaint alleging that his first placement on alternate duty constituted discrimination and retaliation in violation of Title VII and GINA. He then amended that complaint to include his second placement on alternate duty. Ortiz filed the instant lawsuit on May 30, 2013. After the City moved for summary judgment, the district court referred the matter to a magistrate judge, who recommended granting the motion in full. No party filed any objection to that recommendation, which warned that a failure to file timely

4

No. 15-50341

written objections would prevent the matter from being reviewed de novo by the district judge or appellate court.    The district court adopted the recommendation, and this appeal timely followed.

## II. Standard of Review

Ordinarily, "[w]e review a district court's grant of summary judgment de novo, applying the same standards as the district court." *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1026 (5th Cir. 2015) (citation omitted). But plain error review applies where, as here, "a party did not object to a magistrate judge's findings of fact, conclusions of law, or recommendation to the district court" despite being "served with notice of the consequences of failing to object." *United States ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 205 n.2 (5th Cir. 2013) (citing *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1)).    "The plain error exception is designed to prevent a miscarriage of justice where the error is clear under current law." *Septimus v. Univ. of Hous.*, 399 F.3d 601, 607 (5th Cir. 2005).    To prevail under this standard, the appellant "must show (1) that an error occurred; (2) that the error was plain, which means clear or obvious; (3) the plain error must affect substantial rights; and (4) not correcting the error would seriously impact the fairness, integrity, or public reputation of judicial proceedings." *Id.*[2]

---

[2] Ortiz failed to acknowledge the applicability of plain error review in his opening brief and filed no reply after SAFD provided the appropriate standard of review in its brief.

5

No. 15-50341

## III. Discussion

For the reasons stated below, the district court did not plainly err by dismissing any of Ortiz's claims.

### A. GINA Discrimination Claim

Ortiz first argues that the district court wrongly dismissed his claim that SAFD discriminated against him in violation of GINA by requiring that he participate in a mandatory wellness program. GINA prohibits an employer from discriminating or taking adverse actions against an employee "because of genetic information with respect to the employee." 42 U.S.C. § 2000ff-1(a)(1), (2). The Act also makes it unlawful "for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee," with some exceptions. *Id.* § 2000ff-1(b). One of these exceptions is that an employer that offers medical services "as part of a wellness program" may request genetic information if the "employee provides prior, knowing, voluntary, and written authorization" and certain confidentiality requirements are met. *Id.* § 2000ff-1(b)(2); *see also* 29 C.F.R. § 1635.8(b)(2). GINA provides a private right of action, incorporating the enforcement and remedies procedures of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000ff-6(a)(1).

For purposes of GINA, "genetic information" means information about the "genetic tests" of an individual or her family members, and information about "the manifestation of a disease or disorder in family members of such individual." *Id.* § 2000ff(4)(A); *see also* 29 C.F.R. § 1635.3(c). "Genetic test," in turn, "means an analysis of human DNA, RNA, chromosomes, proteins, or metabolites, that detects genotypes, mutations, or chromosomal changes." *Id.* § 2000ff(7)(A). "The term 'genetic test' does not mean an analysis of proteins or metabolites that does not detect genotypes, mutations, or chromosomal changes." 42 U.S.C. § 2000ff(7)(B). Nor does that term encompass medical

6

tests such as those for blood counts, cholesterol, or liver function. *See* 29 C.F.R. § 1635.3(f)(3). And an employer does not violate GINA through "the use, acquisition, or disclosure of medical information that is not genetic information about a manifested disease, disorder, or pathological condition of an employee or member, including a manifested disease, disorder, or pathological condition that has or may have a genetic basis." *Id.* § 2000ff-9.

The district court correctly dismissed this claim because Ortiz presented no evidence that SAFD requested, required, or purchased his genetic information, or discriminated against him on the basis of genetic information. Rather, he appears to misread the statute as forbidding *any* mandatory wellness program, regardless of whether it involves a request for or the acquisition of genetic information. Ortiz also ignores the statutory distinction between "medical information" and "genetic information." Far from plainly erroneous, the district court's decision comports with the plain language of the statute and the sparse case law in this area. *See Dumas v. Hurley Med. Ctr.*, 837 F. Supp. 2d 655, 666 (E.D. Mich. 2011) (dismissing GINA claim for failure to allege use or misuse of "genetic information" as defined by the statute); *Smith v. Donahoe*, 917 F. Supp. 2d 562, 571 (E.D. Va. 2013) (similar).

## B. GINA Retaliation Claim

Ortiz also argues that the district court erred in dismissing his claim for retaliation on the basis of GINA-protected activity. Borrowing from the Title VII context, the district court applied the *McDonnell Douglas* burden-shifting framework, which the parties appear to agree was appropriate. That framework requires a retaliation plaintiff to first make out a prima facie case by showing (1) that he engaged in protected activity, (2) that he suffered an adverse employment action, and (3) "that a causal link existed between the protected activity and the adverse action." *Davis v. Fort Bend County*, 765 F.3d 480, 489–90 (5th Cir. 2014). "If the employee establishes a prima facie case,

the burden shifts to the employer to state a legitimate, non-retaliatory reason for its decision. After the employer states its reason, the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation." *Id.* at 490 (citation omitted).

Ortiz contends that he engaged in GINA-protected activity when he refused to comply with the Wellness Program at various times, and when he filed grievances regarding his placements on alternate duty. The district court concluded that all but one of these activities were not protected by GINA because Ortiz did not in those instances mention GINA or genetic information. This conclusion was not clearly or obviously wrong. *See Riley v. Napolitano*, 537 F. App'x 391, 392 (5th Cir. 2013) ("[O]ur court has consistently held that a vague complaint, without reference to an unlawful employment practice under [the relevant anti-discrimination statute], does not constitute protected activity.").

The district court found that Ortiz's April 2012 EEOC complaint could constitute protected activity because it alleged discrimination on the basis of genetic information, and decided that Ortiz's placement on alternate duty was an adverse employment action because he lost eligibility for overtime. But the district court concluded that there was no causal link between the protected activity and adverse action because Ortiz was placed on alternate duty for the second time as soon as he again refused to complete the mandated physical, and before his EEOC complaint was even filed. In the alternative, the district court concluded that the record demonstrated a legitimate reason for the administrate duty placements—Ortiz's refusals to comply with a mandatory program designed to ensure that firefighters can perform their jobs safely and effectively—and that Ortiz had not created a genuine issue of material fact as to pretext. The district court reasoned that the timeline of events and SAFD's submitted evidence showed that SAFD's actions were motivated by Ortiz's

refusal to take a stress test, "not because he opposed practices protected under GINA." These conclusions were not plainly erroneous.

## C. Title VII National Origin Claim

Finally, Ortiz challenges the district court's dismissal of his claim that he was discriminated against because he is Hispanic, which he attempted to show through comparison to McEnery's allegedly disparate treatment. The district court found that Ortiz had established a prima facie case of discrimination in violation of Title VII, but correctly recognized that SAFD would nevertheless be entitled to summary judgment if it "articulate[d] a legitimate, nondiscriminatory . . . reason for its employment action" and Ortiz could not show a triable issue of fact as to whether "the employer's proffered reason is not true but instead is a pretext" for a discriminatory purpose. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

The district court concluded that the Wellness Program's stated goal of assuring that firefighters and other department employees could "safely and effectively perform their job[s]" was a legitimate motive for requiring medical examinations and assigning noncompliant Ortiz to alternate duty. The district court then found that Ortiz had failed to create a genuine issue of material fact on pretext. The district court noted that SAFD had advanced legitimate reasons for not placing McEnery on alternate duty, and determined that Ortiz had not created a triable issue as to whether those reasons were false. As with Ortiz's GINA retaliation claim, the district court also found that the timing of Ortiz's placements on administrative duty showed that SAFD's motive was ensuring compliance with the Wellness Program and furthering its goals, not discriminating against Ortiz because of his national origin. Again, we cannot say that these conclusions were plainly erroneous.

No. 15-50341

## IV. Conclusion

Because the district court did not plainly err in dismissing any of Ortiz's claims, we AFFIRM.