# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 15-40567

————

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2016

Lyle W. Cayce
Clerk

STEVE QUIBODEAUX; THE KIDS SAFARI, INCORPORATED, doing business as Wee Care Childcare and Preschool,

> Plaintiffs - Appellants

v.

NAUTILUS INSURANCE COMPANY,

> Defendant - Appellee

————

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 1:10-CV-739

————

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

In September 2008, Hurricane Ike damaged a warehouse and daycare center owned by appellant Steve Quibodeaux.  He filed a claim with his property insurer, appellee Nautilus Insurance Company, which paid the claims based on an independent adjuster's estimates.  Two years later, Quibodeaux sued Nautilus for breach of contract and bad faith.  After full discovery and a

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-40567

full appraisal process, the district court granted summary judgment for Nautilus on all of Quibodeaux's claims. For the reasons that follow, we affirm.

I.

On September 13, 2008, Hurricane Ike made landfall near Galveston, Texas, causing damage along the Texas coastline and into Louisiana, including to two Texas properties owned by Quibodeaux: a warehouse in Orange, Texas, and a daycare center in Bridge City, Texas.[1] Nautilus provided commercial-property insurance for both properties. After the storm, Quibodeaux reported a claim to his insurance agent, McNeill Insurance Company; McNeill notified Nautilus of the claim on September 19. On October 14, Nautilus sent Dalton Evans, an independent adjuster, to inspect the properties. Two months later, on December 23, Evans completed his estimate of the claims. His estimates, less the applicable deductibles, came to $11,367.82 for the daycare claim and $62,588.13 for the warehouse claim. In January 2009, Nautilus paid these amounts and then some; as Nautilus explained at oral argument, it determined that it was "more expedient" to pay the replacement-cost value for each claim, instead of the lower actual-cash value, without requiring proof of repairs as is typically required to receive the replacement-cost value. Ultimately, Nautilus paid $12,149.69 on the daycare claim on January 6 and $72,720.97 on the warehouse claim on January 8. Quibodeaux cashed both checks. In total, Nautilus overpaid by $10,914.17.

Nautilus heard nothing from Quibodeaux for nearly two years, until September 2010, when Quibodeaux sued Nautilus in state court. Quibodeaux brought claims for breach of contract, statutory bad faith under Chapter 541 of the Texas Insurance Code, common law bad faith, violation of the Texas

---

[1] The Bridge City property is owned by Kids Safari, Inc. d/b/a Wee Care Childcare and Preschool, the other plaintiff in this lawsuit. Steve and Carolyn Quibodeaux own Kids Safari, Inc. We refer to both plaintiffs as "Quibodeaux."

No. 15-40567

Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41–.63, and violation of Chapter 542 of the Texas Insurance Code.

For the next two months, Nautilus repeatedly asked Quibodeaux for a demand or an itemization of damages so that it could attempt to resolve the claim outside of court. Quibodeaux's attorney agreed to make a demand, but never sent one. He later told Nautilus that he did not have expert reports estimating the cost of repairs that he needed to make a demand.

Thereafter, Nautilus removed the lawsuit to federal court and sent a letter to Quibodeaux's attorney demanding appraisal in accordance with the insurance policies. Nautilus attached a proof of loss form to this letter and requested that Quibodeaux complete the proof of loss for any additional damages he was claiming. Quibodeaux did not agree to appraisal and refused to complete the proof of loss form, but did identify his appraiser if the court compelled appraisal. Nautilus moved to compel appraisal.

Meanwhile, the parties conducted discovery. In Quibodeaux's Rule 26(a) initial disclosures, Quibodeaux mentioned for the first time that "unpaid contents damage" were part of his damages in this case. Quibodeaux also provided, as part of a larger document production, a handwritten list of contents and their values for the daycare property.

Thereafter, the district court granted Nautilus's motion to compel appraisal and stayed the case pending the appraisal. The appraisers completed the appraisal on May 23, 2013; the appraisal assessed damages to the exteriors and structures of the two properties. No amounts for contents damages were included in the appraisal award. That same week, on May 28, Nautilus wrote to Quibodeaux explaining its calculation of how much it owed under the appraisal award after subtracting the deductibles and its initial payments. Quibodeaux did not respond. Two weeks later, on June 13,

3

No. 15-40567

Nautilus sent checks to Quibodeaux, which Quibodeaux cashed without dispute.

Nautilus again heard nothing from Quibodeaux for six months, until November 2013, when Quibodeaux wrote to Nautilus stating that he still had claims for, among other things, damaged contents and lost business income, which needed to proceed to trial. Quibodeaux also moved to set a trial date. The district court denied the motion and ordered the parties to file dispositive motions. Nautilus filed a motion for summary judgment, which a magistrate judge reviewed and recommended granting. The district court adopted the magistrate judge's recommendation in full, overruled Quibodeaux's objections, and entered summary judgment for Nautilus. This appeal followed.

## II.

We review a summary judgment de novo, applying the same legal standards as the district court. *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015). Summary judgment is proper when the pleadings, the discovery and disclosure material on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a party does not object to a magistrate judge's "findings of fact, conclusions of law, or recommendation to the district court," despite receiving "notice of the consequences of failing to object," we review for plain error. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825–26 (5th Cir. 2015). We do not consider "evidence or arguments that were not presented to the district court for its consideration in ruling on the motion." *Estate of Henson v. Wichita County*, 795 F.3d 456, 469 n.8 (5th Cir. 2015) (quoting *Stults v. Conoco, Inc.*, 76 F.3d 651, 657 (5th Cir. 1996)). We may affirm on any basis raised below and supported by the record. *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009).

No. 15-40567

III.

A.

Quibodeaux first challenges the district court's grant of summary judgment on his breach-of-contract claim. Under Texas law, an insurer's timely payment of a binding and enforceable appraisal award, and the insured's acceptance of the payment, estops the insured from maintaining a breach-of-contract claim against the insurer. *See Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 787 (Tex. App. 2004). Here, it is undisputed that Nautilus timely paid the amount awarded to Quibodeaux in the appraisal, and that Quibodeaux accepted the payment. Thus, the appraisal should estop Quibodeaux from proceeding with his breach-of-contract claim.

In response, Quibodeaux argues that he should not be estopped from bringing his breach-of-contract claim for contents damages because the appraisal award included only structural damages, not contents damages. As a result, he contends, the appraisal should not be binding with respect to those damages. To prevail on a claim for breach of an insurance contract under Texas law, a plaintiff must prove, among other things, "that the insured was damaged by the breach, and the amount of resulting damages." *Metro Hosp. Partners, Ltd. v. Lexington Ins. Co.*, 84 F. Supp. 3d 553, 569–70 (S.D. Tex. 2015) (applying Texas law). Here, Quibodeaux points to no competent summary judgment evidence on the damages element of his claim. Our own unaided review of the record reveals only the unsigned, handwritten list of contents from the daycare center produced during discovery. Even if Quibodeaux had directed our attention to the list, the document is unauthenticated and thus is improper as summary judgment evidence. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thus, Quibodeaux has failed to show that there is a genuine dispute as to an essential element of his breach-of-contract claim for contents damages. *See Metro*, 84 F. Supp. 3d at 570.

No. 15-40567

Quibodeaux also argues that he should not be estopped from bringing his breach-of-contract claim related to Nautilus's claims-handling process. He contends that Nautilus breached the insurance contract pre-appraisal by failing to provide a proof-of-loss form, failing to comply with policy deadlines, and failing to properly investigate by using an overworked adjuster. In the district court, Quibodeaux did not present these arguments about Nautilus's possible breaches related to the claim-handling process. Instead, the portion of his response to Nautilus's motion for summary judgment dedicated to his breach-of-contract claim focused on his claim for contents damages, discussed above. We do not consider "arguments that were not presented to the district court." *Estate of Henson*, 795 F.3d at 469 n.8. The district court properly granted summary judgment for Nautilus on Quibodeaux's breach-of-contract claim.

## B.

Quibodeaux next challenges the district court's grant of summary judgment on his claims for common-law bad faith and statutory bad faith under Chapter 541 of the Texas Insurance Code, and his claim under the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41–.63. Under Texas law, to prevail on a common-law bad faith claim, an insured must first show that the insurer breached the contract. *See Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). The same requirement applies to claims for statutory bad faith under Chapter 541 of the Insurance Code and under the Trade Practices Act. *See Emmert v. Progressive Cnty. Mut. Ins. Co.*, 882 S.W.2d 32, 36 (Tex. App. 1994). As shown above, Quibodeaux cannot show a breach of contract, so he cannot establish the predicate to bring a bad faith claim. Nor does he argue that an exception to the rule applies. *See Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) (summarizing exceptions). So these claims fail.

No. 15-40567

C.

Finally, Quibodeaux challenges the district court's grant of summary judgment on his "Prompt Payment Act" claims under Chapter 542 of the Texas Insurance Code. Quibodeaux argues that he is entitled to Chapter 542 damages both for Nautilus's delay in payment between the initial payments and the payment of the appraisal award and for the delay in notice and payment between the inspection and the initial payment. The former argument fails as a matter of law: A plaintiff may not seek Chapter 542 damages for any delay in payment between an initial payment and the insurer's timely payment of an appraisal award. *See In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563 (Tex. App. 2010). As to the damages for the initial delay, Quibodeaux argues on appeal that Nautilus is liable for violations of Texas Insurance Code §§ 542.056 and 542.058. The latter claim was not presented to the district court, so we will not consider it. *See Estate of Henson*, 795 F.3d at 469 n.8. Thus, we turn to Quibodeaux's claim under section 542.056.

Section 542.056 requires that an insurer notify a claimant of acceptance or rejection of the claim within 15 business days of receiving all necessary documents. Tex. Ins. Code § 542.056. Alternatively, under section 542.056(d), the insurer must notify the claimant that it needs more time to accept or reject. *Id.* § 542.056(d). In this case, these deadlines were extended by 15 days because Hurricane Ike was a weather-related catastrophe. *See id.* § 542.059(b). Nautilus concedes that it failed to notify Quibodeaux of acceptance, rejection, or the need for more time on Quibodeaux's claims within the required deadline.

The district court adopted the magistrate judge's report and recommendation, which held that the Prompt Payment Act claims should be dismissed on the ground that they were barred by Nautilus's timely payment

of the appraisal award. We review for plain error when a party is "served with notice of the consequences of failing to object" to a magistrate's report and recommendation but nonetheless does not object to the "magistrate judge's findings of fact, conclusions of law, or recommendation to the district court." *Ortiz*, 806 F.3d at 825–26. Here, the magistrate judge's report and recommendation contained a clear warning about the consequences of failing to object. Nonetheless, Quibodeaux's objection as to the Prompt Payment Act claims stated only that "the Magistrate erred in dismissing Plaintiffs' claim for penalty interest under § 542 of the Texas Insurance Code because, as demonstrated in Plaintiffs' summary judgment response, they are entitled to that interest for the time period preceding Defendant's untimely payments[.]" This objection addresses only untimely payment, which could refer to only sections 542.057[2] (timely payment after acceptance) and 542.058 (timely payment), not section 542.056 (timely notice of acceptance of claim or of need for more time). Hence we review for plain error Quibodeaux's claim under section 542.056.

Under the plain error standard of review, we have discretion to correct a plain error that affects substantial rights. *See Oden v. Oktibbeha County,* 246 F.3d 458, 466 (5th Cir. 2001). But we should not exercise our discretion to correct a plain error unless "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)).

Here, Nautilus has calculated the 18% penalty interest on the daycare and warehouse property claims that would have accrued until it notified Quibodeaux of acceptance of the claim by paying it. *See U.S. Fire Ins. Co. v.*

---

[2] To the extent that Quibodeaux had earlier raised a claim under section 542.057, he has failed to brief it on appeal, and thus has waived it. *See Dardar v. Lafourche Realty Co.*, 985 F.2d 824, 831 (5th Cir. 1993).

No. 15-40567

*Lynd Co.*, 399 S.W.3d 206, 221–22 (Tex. App. 2012) (affirming trial court finding of a presumption of acceptance when a claim is paid). Nautilus demonstrates that its initial overpayment of the adjuster's estimates more than compensated Quibodeaux for the penalty interest that accrued because of Nautilus's delay. In addition, if Nautilus is liable for an 18% penalty for violating section 542.056, then Quibodeaux would be entitled to the attorney's fees on that successful claim. Tex. Ins. Code § 542.060. Nautilus asserts that, as with the 18% penalty interest, its overpayment of both claims by over $10,000 compensates Quibodeaux for whatever attorney's fees may have been incurred in pursuing the section 542.056 claim, which has not been the focus of this lawsuit. Quibodeaux does not contest any of these calculations in his reply brief, nor does he challenge Nautilus's argument that its voluntary overpayment of the claims in January 2009 was greater than the amount that Quibodeaux would be entitled to for any violation of Texas Insurance Code § 542.056. As a result, Quibodeaux has not shown that the district court's grant of summary judgment on this issue affected his substantial rights. *Oden,* 246 F.3d at 466. Hence there is no reversible plain error.

IV.

The judgment of the district court is affirmed.