# IN THE SUPREME COURT OF TEXAS

═══════════

No. 17-0640

═══════════

BARBARA TECHNOLOGIES CORPORATION, PETITIONER,

v.

STATE FARM LLOYDS, RESPONDENT

═══════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

═══════════════════════════════

CHIEF JUSTICE HECHT, joined by JUSTICE BROWN and JUSTICE BLACKLOCK, dissenting.

Appraisal is a process insurance policies commonly afford insurers and insureds for resolving disputes over the amount of a claim. Each side picks an appraiser, the appraisers pick an umpire, and the three inspect the loss and render an award. Appraisals have been used in Texas for more than a century,[1] and to good end. "Access to the appraisal process to resolve disputes", the Court writes, "is an important tool in the insurance claim context, curbing costs and adding efficiency in resolving insurance claims",[2] echoing our earlier observation that "[a]ppraisals can provide a less expensive, more efficient alternative to litigation".[3] But after praising appraisal's effectiveness, the Court proceeds to hobble it. By today's decision, as a practical matter, whenever

---

[1] *See State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 888 (Tex. 2009).

[2] *Ante* at ___.

[3] *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding).

an appraisal is requested, even by the insured, an insurer is subject to paying 18% interest and attorney fees if the award exceeds what the insurer has found to be due. That certainly discourages use of appraisals, at least by insurers, and may effectively doom the process altogether. I come, then, to bury appraisals, not to praise them.

The Texas Prompt Payment of Claims Act ("the Act")[4] was passed in 1991,[5] amended in 1995,[6] and recodified in 2003.[7] Since then it has been amended four more times.[8] The Act sets deadlines for insurers to process and pay claims, and it penalizes delay. The Act does not mention appraisals. Typically, the right to an appraisal under a policy arises when the insurer and insured dispute the amount of loss after the insurer has rejected all or part of a claim, and thus the appraisal cannot be completed before the Act's final payment deadline. In 2004, one court of appeals held that the Act does not penalize the prompt payment of an appraisal award after the Act's deadline for payment has passed.[9] We declined to review that decision and, 12 years later, a similar decision by

---

[4] TEX. INS. CODE §§ 542.051–.061. All statutory references are to the Texas Insurance Code unless otherwise noted.

[5] Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.03, 1991 Tex. Gen. Laws 939, 1043–1045 (originally codified as TEX. INS. CODE art. 21.55), *amended by* Act of Aug. 25, 1991, 72nd Leg., 2d C.S., ch. 12, §§ 7.01–7.03, 1991 Tex. Gen. Laws 252, 319–321.

[6] Act of May 19, 1995, 74th Leg., R.S., ch. 333, § 1, 1995 Tex. Gen. Laws 2839.

[7] Act of May 22, 2003, 78th Leg., R.S., ch. 1274, § 2, 2003 Tex. Gen. Laws 3611, 3679–3681, *amended by* Act of June 2, 2003, 78th Leg., R.S., ch. 206, § 21.35, 2003 Tex. Gen. Laws 907, 959 (amending former Article 21.55 despite the Legislature's codification of the Act in Chapter 542 earlier in the session).

[8] Act of May 17, 2017, 85th Leg., R.S., ch. 151, § 2, 2017 Tex. Gen. Laws 293, 293; Act of May 29, 2009, 81st Leg., R.S., ch. 833, § 1, 2009 Tex. Gen. Laws 2074; Act of May 17, 2007, 80th Leg., R.S., ch. 730, §§ 2D.007–.008, 2007 Tex. Gen. Laws 1356, 1419; Act of May 24, 2005, 79th Leg., R.S., ch. 728, § 11.009, 2005 Tex. Gen. Laws 2188, 2210–2211 (amending Section 542.053(a) to conform to amendments made to former Article 21.55 in the Act of June 2, 2003 and then repealing that act).

[9] *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 345 (Tex. App.—Corpus Christi 2004, pet. denied).

the court of appeals below.[10] In all, over the past two decades, the issue has been addressed by several Texas appellate courts,[11] by the U.S. Court of Appeals for the Fifth Circuit,[12] and by U.S. District Courts in all four Texas districts.[13] Only one federal district court has disagreed,[14] and the

---

[10] *See Garcia v. State Farm Lloyds*, 514 S.W.3d 257, 275 (Tex. App.—San Antonio 2016, pet. denied) ("We hold that because it is undisputed State Farm paid the appraisal award, Garcia cannot sustain her late payment claim.").

[11] *Hinojos v. State Farm Lloyds*, 569 S.W.3d 304, 313 (Tex. App.—El Paso 2019, pet. filed); *Marchbanks v. Liberty Ins. Corp.*, 558 S.W.3d 308, 312–313 (Tex. App.—Houston [14th Dist.] 2018, pet. filed); *Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 436 (Tex. App.—Houston [14th Dist.] 2018, pet. filed); *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 2017, pet. filed); *Gusma Props., L.P. v. Travelers Lloyds Ins. Co.*, 514 S.W.3d 319, 329–330 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Anderson v. Am. Risk Ins. Co., Inc.*, No. 01-15-00257-CV, 2016 WL 3438243, at *5 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.) (mem. op.); *Bernstien v. Safeco Ins. Co. of Ill.*, No. 05-13-01533-CV, 2015 WL 3958282, at *1 (Tex. App.—Dallas June 30, 2015, no pet.) (mem. op.); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563–564 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-00396-CV, 2007 WL 2264477, at *5 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.) (mem. op.); *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 343 (Tex. App.—Corpus Christi 2004, pet. denied).

[12] *Quibodeaux v. Nautilus Ins. Co.*, 655 F. App'x 984, 988 (5th Cir. 2016); *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 861 (5th Cir. 2003).

[13] *Neff v. Allstate Vehicle & Prop. Ins. Co.*, No. 5:17-CV-191-DAE, 2019 WL 1560473, at *6 (W.D. Tex. Feb. 28, 2019); *Dean v. State Farm Lloyds*, No. 5:16-CV-1321-DAE, 2018 WL 6430534, at *8–9 (W.D. Tex. Nov. 20, 2018); *Mattox v. Safeco Ins. Co. of Ind.*, No. 1:16-CV-1037-DAE, 2018 WL 3603102, at *4 (W.D. Tex. May 29, 2018); *Gamez v. State Farm Lloyds*, No. 5:17-CV-508-DAE, 2018 WL 2251364, at *1 (W.D. Tex. Mar. 19, 2018); *SPJST Lodge #154 & Am. Sokol Org. v. Century Sur. Co.*, No. 4:15-CV-00710-O, 2017 WL 5642613, at *3 (N.D. Tex. Apr. 11, 2017); *McEntyre v. State Farm Lloyds, Inc.*, No. 4:15-CV-00213, 2016 WL 6071598, at *6 (E.D. Tex. Oct. 17, 2016); *Studer v. Lloyds*, No. 4:13-CV-413, 2016 WL 4063782, at *8 (E.D. Tex. July 29, 2016); *Barry v. Allstate Tex. Lloyds*, No. 4:14-CV-00870, 2015 WL 1470429, at *6 (S.D. Tex. Mar. 31, 2015); *Scalise v. Allstate Tex. Lloyds*, No. 7:13-CV-178, 2013 WL 6835248, at *6 (S.D. Tex. Dec. 20, 2013); *Michels v. Safeco Ins. Co. of Ind.*, No. A-12-CA-511-SS, 2013 WL 12076562, at *5 (W.D. Tex. Mar. 13, 2013); *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F. Supp. 2d 642 (S.D. Tex. 2012); *Medistar Twelve Oaks Partners, Ltd. v. Am. Econ. Ins. Co.*, No. H-09-3828, 2011 WL 3236192, at *9 (S.D. Tex. July 27, 2011).

[14] *Graber v. State Farm Lloyds*, No. 3:13–CV–2671–B, 2015 WL 3755030, at *10 (N.D. Tex. June 15, 2015) (concluding that "State Farm's full and timely payment of the appraisal award [did] not preclude Plaintiff's claim for statutory interest under the TPPCA as a matter of law" and denying State Farm's motion for summary judgment on that issue).

Fifth Circuit later disapproved of that decision's reasoning.[15] In eight legislative sessions, not a single bill has been introduced to correct or repudiate this unanimous caselaw.

Today, the Court holds that in 1991, the Legislature not only intended but *clearly* intended, in plain language no less, to penalize the use of the appraisal process to resolve covered claims, contrary to two dozen decisions of a dozen courts, which the Legislature has left undisturbed for more than a decade. There is a better way to read the Act. I respectfully dissent.

## I

Petitioner Barbara Technologies Corporation, managed by Bart and Barbara Spaur, owns a small, commercial rental building in northwest San Antonio insured by respondent State Farm Lloyds. The building has a flat, asphalt (modified bitumen) roof, which is a little more than 1,000 square feet in size and at least 20 years old. After a hailstorm on March 31, 2013, leaks developed, and the Spaurs had most of the roof covered with an elastomeric (rubber-like) coating and had some areas covered with roof cement (sealant). But more than six months later, hearing that the hotel across the street and the adjacent strip shopping center were getting new roofs, Bart filed a claim with State Farm on October 17. State Farm tried to reach the Spaurs by phone the next day and left word to set up an appointment for an inspection. Bart called back on October 24, and the inspection was scheduled for a few days later.[16]

---

[15] *Mainali Corp. v. Covington Specialty Ins. Co.*, 872 F.3d 255, 259 (5th Cir. 2017) ("The most fundamental problem with *Graber* is that it did not recognize an *Erie* court's duty to follow state courts' interpretation of state law rather than the interpretation the federal court thinks makes the most sense.").

[16] The record is conflicting whether the inspection took place on October 30 or 31.

4

On the day of the inspection, State Farm's adjuster met Bart and his roofer at the building. No roof damage was visible because of the coating and sealant, but the roofer insisted that indentations underneath could still be felt. The adjuster disagreed. The part of the roof that had not been covered with coating and sealant showed no hail damage, and a metal roof over the front entryway was likewise undamaged. Air conditioning units on the roof were also undamaged, but there were splatter marks showing the size of the hail. On November 4, State Farm notified Barbara Technologies that it found only $3,153.57 in damage to the roof, which was less than the policy's $5,000 deductible.

Over three months later, on February 21, 2014, Barbara asked State Farm to have a different adjuster reinspect the roof because several roofers had told her that the roof had hail damage. Although State Farm was not obligated to conduct a second inspection, it agreed to do so. A different adjuster met with the Spaurs and a new roofer on March 4. The roofer tried to expose dents in the roof beneath the coating and sealant but could not do so. The next day, State Farm notified the Spaurs that it still could find no evidence of the hail damage they claimed.

On July 14, Barbara Technologies sued State Farm for refusing to pay its claim. It asserted, among other things, violations of the Act, statutory and common law bad faith, and breach of contract. On January 9, 2015, State Farm invoked its right to an appraisal under the policy. The policy provided:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. Each party will notify the other of the selected appraiser's identity within 20 days after receipt of the written demand for an appraisal. The two appraisers will select an umpire. If the appraisers cannot agree

5

upon an umpire within 15 days, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

On August 18, the Spaurs' appraiser and the umpire awarded $195,345.63 in damages due to the hailstorm. On August 25, five business days later, State Farm paid the award less appreciation and the deductible—$178,845.25.

Barbara Technologies amended its petition to drop all its claims except for violations of the Act. The trial court granted summary judgment for State Farm. The court of appeals affirmed, adhering to its precedent, which we had declined to review, as well as "a long line of cases holding that a full and timely payment of an appraisal award under the policy precludes an insured from recovering penalties under the [Act] as a matter of law."[17]

## II

As noted at the outset, this Court has always viewed the appraisal process, in use for more than a century, as a positive means for resolving insurance claims. The Legislature has expressly provided for the appraisal of some claims.[18] It is difficult to imagine that the Legislature could have intended anything that would impede the utility of appraisals to insurers and insureds alike, that courts would fail to recognize that intent for 28 years, or that the Legislature would itself acquiesce in the failure.

---

[17] 566 S.W.3d 294, 296–297 (discussing *Garcia*, 514 S.W.3d at 275–276).

[18] *See, e.g.*, § 2210.574(b) (authorizing a claimant to demand appraisal of a loss under a windstorm-and-hail-damage insurance policy).

An appraisal establishes the amount of loss, but not liability, though ordinarily little or nothing is left for trial. The right to request an appraisal does not arise until the insurer and insured "disagree on the value of the property or the amount of loss". Ordinarily, disagreement would be precipitated by the insurer's rejection of all or part of the claim. An appraisal cannot resolve a disagreement over coverage. By the time an appraisal offers a means of resolution, coverage issues should have been resolved.

The Act sets deadlines for the prompt payment of insurance claims.[19] Within 15 days of receiving notice of a claim, an insurer must acknowledge receipt, commence any investigation, and "request from the claimant all items, statements, and forms that the insurer reasonably believes, *at that time*, will be required from the claimant."[20] This need not be a one-time request. "An insurer may make additional requests for information if during the investigation of the claim the additional requests are necessary."[21] For ease of reference, I refer to all these materials as the "Info". Within 15 days of receiving the Info, an insurer must notify the claimant "of the acceptance or rejection of [the] claim".[22] Finally, within five days of accepting all or part of a claim, the insurer must pay the amount accepted.[23]

---

[19] I omit mention of various exceptions immaterial to the present case.

[20] § 542.055(a) (emphasis added).

[21] § 542.055(b).

[22] § 542.056(a).

[23] § 542.057(a).

Nothing in the Act suggests that after an insurer rejects a claim, the investigation cannot be reopened, either at the claimant's request or by the insurer on its own. Neither does the Act provide for reopening an investigation. It is silent on the subject. In this case, after State Farm initially rejected the claim, Barbara Technologies asked State Farm to take a fresh look with additional information, which it did. Had State Farm decided that its first decision was wrong and that the claim should be paid after all, nothing in the Act suggests that its reconsideration, in good faith, would violate the deadlines. In that situation, the deadlines simply reset, lest the insurer be incentivized to stand pat when it would not do so otherwise.

The Court says that "the rejection or acceptance of a claim is the insurer's acknowledgment that it had all the information it needed from the claimant to determine whether the claimant was entitled to benefits under the policy."[24] But as noted, the Act requires only that an insurer request Info that it "reasonably believes, *at that time*, will be required".[25] The necessary implication is that other Info may be required later. The Court agrees that an insurer should reconsider its decision based on new Info but then holds that if the insurer does so, it violates the Act's deadlines. The only way to serve the Act is to violate it.

The Act does not mention appraisals. It is unlikely that an appraisal would be requested by either the insurer or the insured before a claim is rejected in whole or in part, since the policy right to an appraisal is triggered by a "disagree[ment] on the value of the property or the amount of loss". But if a preclaim-determination appraisal were requested, the award would certainly be part of the

---

[24] *Ante* at ___.

[25] § 542.055(a) (emphasis added).

Info—information the insurer could reasonably need to evaluate the claim. And that information would necessarily come from the claimant through the appraisal of his property. Accordingly, the period for accepting or rejecting the claim would not begin to run until the appraisal award was rendered. An appraisal performed after a claim has been initially rejected in whole or in part and the investigation reopened should be treated no differently than one performed before an initial rejection. Because an appraisal award cannot be contested, that amount becomes the amount of the claim.

The Court concludes that an insurer's request for an appraisal is not a request for Info to determine the claim but an exercise of its contractual right under the policy.[26] The one has nothing to do with the other. An insurer's exercise of its contractual right does not take away from the fact that it unquestionably receives Info from an appraisal. As the Court acknowledges, an insurer could hire its own third-party appraiser to provide Info as part of its investigation.[27] There is no difference between Info supplied by third-party appraisers acting independently or as part of an appraisal.

For violations, the Act contains two provisions for imposing penalties. Section 542.060(a) states that "if an insurer that is liable for a claim . . . is not in compliance with this subchapter, the insurer is liable to pay . . . , in addition to the amount of the claim, interest on the amount of the claim at the rate of 18 percent a year as damages, together with reasonable and necessary attorney's fees."[28] Section 542.058(a)–(b) provides that if the insurer "delays payment of the claim" for more

---

[26] *Ante* at ___.

[27] *Ante* at ___ n.8.

[28] *Id.* § 542.060(a).

than 60 days after receiving the Info, "the insurer shall pay damages and other items as provided by Section 542.060" unless "it is found as a result of arbitration or litigation that a claim received by an insurer is invalid and should not be paid by the insurer."[29] While Section 542.060(a) is broader, both sections apply to delayed payments in the same way. An insurer is not "liable for a claim" under Section 542.060(a) that is adjudicated invalid or nonpayable under Section 542.058(b).[30]

Several times the Court insists that the Act is clear, yet it cannot say whether Section 542.060(a) applies to this case or whether the standards for imposing a penalty—liable under Section 542.060(a) and valid and payable under Section 542.058(a)–(b)—are equivalent. The Court concludes that the burden of proving that the standard, whatever it is, has been met is on the insured.[31] But the effect of the Court's application of these sections to payments of postclaim-rejection appraisal awards is to make every appraisal request subject to the penalty. The insured must still prove coverage, but coverage issues are not likely to subsist; otherwise, an appraisal would not go far in resolving the claim and would not be requested. An appraisal can rarely, if ever, be performed in 60 days. An insurer will escape the penalty only if the insured abandons the litigation. At bottom, the Act's complete silence on appraisals, in the Court's view, discourages them, despite their recognized value in resolving disputes, including the one in this case.

The 60-day period in Section 542.058(a) does not begin to run until the insurer has all the Info needed to determine whether to accept or reject the claim. The amount of the claim is a critical

---

[29] *Id.* § 542.058(a)–(b).

[30] JUSTICE BOYD would hold that voluntary payment of a claim renders an insurer liable. *See Ante* at ___. In other words, unlike every other person or entity imaginable, an insurer cannot settle a claim without admitting liability.

[31] *Ante* at ___.

piece of information that appraisal supplies. No one would argue that an adjuster's assessment of the amount of damages would be necessary in resolving the claim. That is no different if appraisers perform the same claim's adjustment as part of the appraisal process.

Courts have been unanimous in holding that the Act does not penalize prompt payment of appraisal awards though made more than 60 days after the claim has been rejected in whole or in part. Here is the Court's analysis of those cases in full:

> Although generally short on statutory analysis, we do not disagree with the crux of the courts of appeals' opinions on which State Farm relies—use of the appraisal process to fully resolve a dispute as to the amount of policy benefits due, if owed at all, does not subject the insurer to TPPCA damages. . . . [W]e caution that to the extent these opinions could be read to excuse an insurer liable under the policy from having to pay TPPCA damages merely because it tendered payment based on an appraisal award, or to foreclose any further proceedings to determine the insurer's liability under the policy, we disapprove of these opinions. Nothing in the TPPCA would excuse an insurer from liability for TPPCA damages if it was liable under the terms of the policy but delayed payment beyond the applicable statutory deadline, regardless of use of the appraisal process.[32]

I think this is a fair paraphrase: the crux of the courts' opinions is that the Act does not penalize a postclaim-rejection payment of an appraisal award, and we do not disagree with that; but the Act does not excuse a postclaim-rejection payment of an appraisal award from its penalties, so we disapprove of them. Well.

Barbara Technologies complains that by requesting appraisals, insurers delay payment in order to exhaust insureds from pursuing payment. But as the Court acknowledges, an insurer that does not timely request an appraisal waives its right,[33] and an insurer that uses the appraisal process

---

[32] *Ante* at ___ (citations omitted).

[33] *Ante* at ___.

in bad faith is subject to suit under Chapter 541.[34] Barbara Technologies does not explain why only the Act's penalties are adequate protection of its interests.

The result of today's decision is this: If an appraisal is requested, either by the insurer or the insured, after a claim has been rejected in whole or in part, and the insurer immediately pays the award, it is nevertheless liable for 18% interest and attorney fees if the claim is later adjudicated to be covered by the policy. Unless the insured gives up, litigation is unavoidable, either over the rejection or over the penalty. If that does not make appraisal requests unlikely, it certainly makes them less likely. The Court renders the appraisal process it praises of little use.

We are, of course, bound by the text of the Act and cannot rewrite it to achieve what we think are better policies. Under the Act, an insurer is not to be penalized until it has received all information necessary to evaluate a claim. But an appraisal award can be a critical part of that information. The Court's interpretation of the Act is inconsistent with its clear meaning; discourages continued use of a century-old appraisal process that fosters settlements, which the Legislature cannot possibly have intended; and upends 15 years of unanimous caselaw, which the Legislature has had multiple opportunities to correct if wrong.

Accordingly, I respectfully dissent.

Nathan L. Hecht
Chief Justice

Opinion delivered: June 28, 2019

---

[34] *Ante* at ___.

12