EDITH BROWN CLEMENT, Circuit Judge:
Defendant-appellant Patrick Nguyen (“Nguyen”) appeals from the district court’s order granting summary judgment in favor of plaintiff-appellee Humana Health Plan, Inc. (“Humana”). For- the reasons explained below, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.
*1025 Facts and Proceedings
Nguyen is a participant in the API Enterprises Employee Benefits Plan (the “Plan”), an ERISA-governed employee welfare plan established by API Enterprises, Inc. (“API”). API entered into a Plan Management Agreement (“PMA”) with Humana, through which Humana agreed to serve as “Plan Manager” and to provide various administrative services to the Plan. Two features of the PMA are particularly relevant here.
First, the PMA made clear that API or the Plan’s administrator would make all discretionary decisions about the Plan’s administration and management, and that Humana “act[ed] as an agent of [API] authorized to perform specific actions or conduct specified transactions only as provided in this Agreement.” API agreed to give Humana written notice of “the Plan’s management policies and practices,” and. Humana agreed that it “operat[ed] within a framework of the Plan’s management policies and practices authorized or established by the Plan Administrator, in accordance with the provisions of the Plan.” While the PMA authorized Humana to conduct its affairs according to its normal operating procedures, it stated that Humana must abandon its normal procedures if “they are inconsistent with the Plan’s management policies or practices.”[1] The PMA authorized Humana to hire “subcontractors and/or counsel” of its choosing to perform certain services. But the parties agreed that API would reimburse Humana for fees paid to outside counsel only if the “legal fees incurred by [Humana] [were] attributable to a request, direction, or demand by [API], the Plan Administrator, or the Employer.”
Second, the PMA stated that Humana would provide “ ‘Subrogation/Recovery’ services ... [for] identifying and obtaining recovery of claims payments from all appropriate parties through operation of the subrogation or recovery provisions of the Plan.” The PMA defined subrogation and recovery services to include: “(1) Investigation of claims and obtaining additional information to determine if a person or entity may be the appropriate party for payment”; “(2) Presentation of appropriate claims and demands for payment to parties determined to be liable”; “(3) Notification to Participants that recovery or subrogation rights will be exercised with respect to a claim”; and “(4) Filing and/ prosecution of legal proceedings against any appropriate party for determination of liability and collection of any payments for which such appropriate party may be liable.” API agreed to pay Humana “30% of all amounts recovered” under the subrogation and recovery services provision.
According to the district court’s opinion, Nguyen was injured in an automobile accident in April 2012. Between April 2012 and April 2013, the Plan paid $274,607.84 to cover Nguyen’s resulting medical expenses. Nguyen “recovered from a third party settlement funds of $255,000 for damages sustained in the accident.” Nguyen argued, the district court accepted, and Humana does not contest that the third party settlement funds were paid by Nguyen’s own insurance provider.
*1026 The Plan notified Humana that it did not intend to seek reimbursement from Nguyen, because the Plan’s governing documents did not allow recovery from a beneficiary’s uninsured motorist policy payout. Humana determined that it was free to disregard the Plan’s instruction. It sued Nguyen in district court, seeking, inter alia, an injunction prohibiting Nguyen from disposing of the insurance payout and an “equitable lien to enforce ERISA and the terms of the Plan.” Nguyen deposited the disputed funds into the court registry and filed a counterclaim against Humana.[2] The parties then filed cross-motions for summary judgment. The district court granted Humana’s motion, denied Nguyen’s motion, and entered judgment in favor of Humana. Nguyen appeals the district court’s order and judgment.
Standard of Review
“Standard summary judgment rules control in ERISA cases.” Green v. Life Ins. Co. of N. Am., 754 F.3d 324, 329 (5th Cir.2014) (internal quotation marks omitted). “We review a district court’s grant of summary judgment de novo, applying the same standards as the district court.” Id. (internal quotation marks omitted). “Summary judgment is appropriate when ‘there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.’ ” Id. (quoting Fed.R.Civ.P. 56(a)).
The decision below turned in part on the district court’s interpretation of the PMA.[3] “[W]e review de novo the interpretation of a contract, including any questions about whether the contract is ambiguous.” Pioneer Exploration, L.L.C. v. Steadfast Ins. Co., 767 F.3d 503, 511-12 (5th Cir.2014).
Discussion
The district court held that Humana was an ERISA fiduciary as a matter of law. In its appeal, Nguyen argues that Humana is not an ERISA fiduciary, and thus, that Humana does not have the statutory right to seek relief under 29 U.S.C. § 1132(a)(3).
I.
Section 1132(a)(3) provides that any “participant, beneficiary, or fiduciary” has the right to seek an injunction and other “appropriate equitable relief’ when necessary to stop violations of ERISA’s regulatory provisions or the terms of the ERISA plan. As relevant here, a third party service provider is an ERISA fiduciary “to the extent ... [it] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of [the plan’s] assets,” or it “has any discretionary authority or. discretionary responsibility in the administration of such plan.” 29 U.S.C. § 1002(21)(A)(i), (iii). In short, “[a] fiduciary within the meaning of ERISA must be someone acting in the capacity of manager [or] administrator.” Pegram, 530 U.S. at 222,120 S.Ct. 2143.
“We give the term fiduciary a liberal construction in keeping with the remedial purpose of ERISA.” Reich v. Lancaster, 55 F.3d 1034, 1046 (5th Cir. 1995) (internal quotation marks and alteration omitted). But the broad definition of *1027 fiduciary is still constrained in at least two ways. First, third-party service providers can serve as ERISA fiduciaries in one capacity and non-fiduciaries in another. See Pegram, 530 U.S. at 225-26, 120 S.Ct. 2143 (explaining that “persons who provide services to an ERISA plan” may operate with a conflict of interest, so long as they comply with fiduciary duties while acting in fiduciary capacity). Thus, when courts evaluate whether a party is an ERISA fiduciary, they must focus on the specific role the purported fiduciary played, as relevant to the claim at hand. See id. at 226, 120 S.Ct. 2143 (holding that, “[i]n every case charging breach of ERISA fiduciary duty, ... the threshold question is ... whether that person was acting as a fiduciary ... when taking the action subject to complaint”).[4]
Second, not every act that could be described as “discretionary” in the general sense makes the actor a fiduciary under ERISA. For almost forty years, the Department of Labor has maintained that “a person who performs purely ministerial functions,” such as the “[pjreparation of reports concerning participants’ benefits” or “[mjaking recommendations to others for decisions with respect to plan administration,” is not an ERISA fiduciary. 29 C.F.R. § 2509.75-8, at D-2.[5] This is because
a person who performs purely ministerial functions ... for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons ... does not have discretionary authority or discretionary control respecting management of the plan, does not exercise any authority or control respecting management or disposition of the assets of the plan, ... and has no authority or responsibility to do so.
Id. The distinction between fiduciaries and ministerial agents applies even to “an attorney, accountant, actuary or consultant who renders legal, accounting, actuarial or consulting services to an employee benefit plan,” even though these parties exercise independent, professional judgment when acting on behalf of an ERISA plan. Id. § 2509.75-5, at D-l; see also Reich, 55 F.3d at 1049 (stating that “professionals ... who provide necessary services to ERISA plans” do not become fiduciaries simply by “play[ing] influential roles by virtue of the expertise that they possess or the capacities in which they act”). “[A]ttorneys, accountants, actuaries and consultants performing their usual professional functions will ordinarily not be considered fiduciaries, [unless] the factual situation in a particular case” shows that the professional serves as a manager or administrator of the plan. 29 C.F.R. § 2509.75-5, at D-l.
The Department of Labor’s interpretations of § 1002(21)(A) are even more persuasive when one considers their similarity to the common law of trusts, which is the “source” of ERISA’s fiduciary duty provisions. See Pegram, 530 U.S. at 224, *1028 120 S.Ct. 2143. Under the common law of trusts, a trustee can delegate ministerial acts to third-parties. George Gleason Bogert & George Taylor Bogert, The Law of Trusts & Tmstees § 555, at 114-15 (rev.2d ed.1980). If a reasonable businessperson would “employ an outside expert” to perform a given function, the courts treats those functions as ministerial. Id. at 116— 17: “[E]mploy[ing] an attorney to collect choses in action running to the trust,” id. § 556, at 142, is viewed as a ministerial function. See id. § 555-56.[6] The trustee may entrust such duties “to realtors, lawyers, brokers, and others, not because there is a total lack of discretion and judgment involved but because such entrustment is common business practice in similar nontrust affairs.” Bogert, supra, § 555, at 117.
Under the Department of Labor’s interpretations — as under the common law of trusts — the power to collect claims on behalf of the ERISA plan is not discretionary per se. There are at least two relevant factors that tip the scales between a ministerial employee and a fiduciary. First, the court must consider whether the plan administrator has set up “a framework of policies, interpretations, rules, practices and procedures” for the third-party to follow.. See 29 C.F.R. § 2509.75-8, at D-2; see also Bogert, supra, § 556, at 142. If the plan administrator has established such a framework, the court must consider whether the plan administrator is actively supervising the agent’s performance of the assigned task. See 29 C.F.R. § 2509.75-8, at D-2; see also Bogert, supra, § 556, at 142. One hallmark of active supervision is a requirement that the third-party submit a recommendation to the plan administrator for approval before the third-party takes further action. If the plan administrator is actively supervising the claims agent, then the fact that the agent is empowered to initiate legal action for the plan does not prove the agent is a fiduciary. See 29 C.F.R. § 2509.75-5, at D-l.
Accordingly, in considering whether the district court erred when it determined as a matter of law that Humana is an ERISA fiduciary under § 1132(a)(3), we focus on the specific role that Humana undertook regarding subrogation and recovery services. And we ask whether API provided a framework of policies and procedures to guide Humana, and supervised Humana as it executed its task.
II.
A.
The district court erred in determining that Humana is an ERISA fiduciary for two reasons. First, the district court’s interpretation of the PMA is not persuasive. The district court focused on the subrogation and recovery clause and determined that its broad language[7] gave Humana independent power to investigate and prosecute claims, even over the Plan’s objections. But the relevant language merely defines the range of potential disputes covered by the contract; it says nothing about who has the right to finally decide whether to investigate or pursue a claim.[8] Thus, even considered in isolation, *1029 the subrogation and recovery services clause does not show that Humana had discretion over the Plan or its assets. Reading the subrogation and recovery clause as part of the entire PMA raises additional questions about the district court’s interpretation. See Indent. Ins. Co. of N. Ant. v.W & T Offshore, Inc., 756 F.3d 347, 351 (5th Cir.2014) (explaining that courts “examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless”). For example, the district' court failed to explain how the PMA’s various provisions describing Humana as the Plan’s agent, operating under the Plan’s policies and procedures, informed its interpretation of the subrogation and recovery services clause.
Second, even if we interpreted the PMA to give Humana broad power, the district court failed to explain why Humana is not a ministerial agent. Humana’s various duties outlined in the subrogation and recovery clause describe the tasks-performed by many law firms and collections agencies.[9] And the mere fact that Humana serves as the Plan’s legal or collections agent is insufficient to show that Humana was the Plan’s fiduciary, unless specific facts show that Humana exercised discretion as described in § 1002(21)(A)(i) and (iii). See 29 C.F.R. § 2509.75-5, at D-l; see also, Nieto v. Ecker, 845 F.2d 868, 870 (9th Cir.1988),[10] cited with approval in Reich, 55 F.3d at 1049-50 (explaining that “attorney was not fiduciary absent evidence that he exercised authority over plan other than by usual professional functions”); cf. Health Cost Controls of Ill., Inc. v. Washington, 187 F.3d 703, 709 (7th Cir.1999) (holding that person was ERISA fiduciary because plan had assigned legal right to reimbursement, and “[b]y virtue of the assignment,” the attorney obtained “broader power than that of a lawyer hired to handle a claim, or of an ordinary collection agent”).
We hold that the subrogation and recovery clause does not show that Humana is an ERISA fiduciary. Accordingly, we hold that the district court erred when it determined that Humana was an ERISA fiduciary based on the language of that clause. Because the district court based its decision on its interpretation of the subrogation and recovery clause, we have not had to consider other evidence that might show whether Humana exercised actual, decision-making authority over the Plan or its assets. Cf. Musmeci v. Schwegmann Giant Super Mkts., Inc., 332 F.3d 339, 351 (5th Cir.2003) (explaining that this court uses “functional approach” to determine whether purported fiduciaries exercise discretionary control over ERISA plans); Hatteberg v. Red Adair Co. Emps. ’ Profit Sharing Plan, 79 Fed.Appx. 709, 716 (5th Cir.2003) (per curiam) (explaining that “factual matter” showing alleged fiduciary’s actual role are “key”). Because we reverse and remand on statutory standing grounds, we do not decide whether the district court erred on the merits.
*1030 B.
We agree with the dissent that a third-party service provider may be an ERISA fiduciary even if the service provider possesses only “some discretionary authority.” But we disagree with the dissent’s suggestion that Reich somehow limited the definition of ministerial activities to include only benefits determinations. As we noted above, the Department of Labor has stated that attorneys “performing their usual professional functions” are not fiduciaries, and has described persons “[m]aking recommendations to others for decisions with respect to plan administration,” who operate “within a framework of policies, interpretations, rules, practices and procedures made by other persons,” as “ministerial” employees. 29 C.F.R. § 2509.75-5, at D-l; id. § 2509.75-8, at D-2. Reading these interpretive guidelines together, we see no reason why collections agents cannot be ministerial employees, so long as they operate under an ERISA plan’s framework of policies and procedures, and the plan administrator supervises the agent’s activities.
We do not hold, as the dissent suggests, that a third-party service provider must have final decision-making authority to be an ERISA fiduciary. We focused on final decision-making authority because that was a factor the district court considered below. Questioning whether a party has final decision-making authority is simply one way of asking whether the Plan administrator was actively supervising Humana.
We also disagree with the dissent that our reasoning is circular. It is of course true that, by holding that Humana was the Plan’s fiduciary, the district court impliedly held that Humana was not a ministerial employee. Our point is that, even if the district court interpreted the PMA to give Humana fairly broad powers, the proper analysis was not at an end without considering the factors, discussed above, which the Department of Labor has stated are relevant in determining whether third-party agents are ministerial employees. Nothing in the district court’s opinion suggests that the court considered those factors.
Humana may be able to adduce facts showing that API never set out a framework of policies and procedures as promised, or that it did not supervise Humana’s collection activities. But the PMA alone does not show either failure. Until Humana adduces at least some evidence showing that API failed to guide and supervise its operations, Humana cannot show that it has the right to seek relief under § 1132(a)(3).
III.
In his notice of appeal, Nguyen stated that he was appealing both the district court’s grant of summary judgment in Humana’s favor, and the district court’s denial of summary judgment in his favor. But Nguyen does not sufficiently address the district court’s failure to grant his motion for summary judgment in his appellate brief. Accordingly, Nguyen has waived that issue.. See, e.g., Heimlich v. First Bank N.A., 80 Fed.Appx. 947, 949 (5th Cir.2003) (per curiam).
Conclusion
For the reasons explained, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion, beginning with a reexamination of the issue of Humana’s standing.

. The dissent states that the PMA authorized Humana to follow its own procedures when performing subrogation and recovery services. Article II of the PMA expressly stated that where API and Humana's policies and procedures conflicted, API’s policies and procedures controlled. Unlike the other articles containing general terms, Article II did not contain a clause stating that later, specific terms controlled more general terms. Thus even the provision cited by the dissent does not show that API relinquished control over Humana when Humana performed subrogation and recovery services.

. Humana also brought conversion and tortious interference claims, but these claims are not before us on appeal.

. The provisions of the PMA are not the terms of the Plan per se, but it may "provide elements of a plan by setting out rules” through which the Plan will be administered. Pegram v. Herdrich, 530 U.S. 211, 223, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000).

. We recognize that Pegram addressed whether a defendant was an ERISA fiduciary. But ERISA only contains one definition of fiduciary, and nothing in ERISA’s civil enforcement provisions suggests that we should apply one fiduciary test when determining whether a party is a proper fiduciary-plaintiff, and another when determining whether a party is a proper fiduciary-defendant.

. Interpretive bulletins from the Department of Labor receive "Skidmore deference,” see Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), as described in Christensen v. Harris County, 529 U.S. 576, 587, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000). See Bussian v. RJR Nabisco, Inc., 223 F.3d 286, 297 (5th Cir.2000) (applying Skidmore deference to IRS bulletin).

. A "chose in action” is a "proprietary right in personam, such as a deb't owed by another person.” Black’s Law Dictionary 294 (10th ed.2014).

. The PMA gives Humana responsibility for the "[ijnvestigation of claims,” and for ”[f]iling and prosecut[ing] ... legal proceedings against any appropriate party.”

.By making clear that the contract covers a broad range of potential claims, the PMA protects both parties. Without such a broad definition, the Plan could assign lucrative claims *1029 to other third-parties, while Humana could refuse to pursue unprofitable claims.

. We list these duties in the “Facts and Proceedings" section above.

. In Nieto, the plaintiff accused an attorney hired by the plan of “fail[ing] to collect ... plan assets.” Id. at 870. The Ninth Circuit rejected this argument, holding that "[u]nder [that] rationale anyone performing services for an ERISA plan — be it an attorney, an accountant, a security guard or a janitor— would be rendered a fiduciary insofar as he exercised some control over trust assets and through"negligence or dishonesty jeopardized those assets.” Id. at 870-71. The Nieto Panel "[found] no basis for expanding the meaning of fiduciary in this fashion[.]” Id. at 871.