# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 1, 2025

Lyle W. Cayce
Clerk

No. 24-30583

_____

Ellen Martinez LeBoeuf, *Individually and as Adminstratrix of the Estate of Alvin Martinez*; Merol Martinez Wells; Andre J. Martinez; Kara Maria Bachman,

*Plaintiffs—Appellants*,

*versus*

Entergy Corporation; Entergy Corporation Employee Benefits Committee; T. Rowe Price Trust Company,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:23-CV-6257

_____

Before Dennis, Oldham, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Appellants are the surviving children of decedent Alvin Martinez, who worked as an employee for Entergy Corporation ("Entergy") until he retired. While employed by Entergy, Martinez participated in the Savings Plan of Entergy Corporation and Subsidiaries (the "Savings Plan"), a defined

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30583

contribution pension plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). This appeal pertains to Appellants' ERISA claim for breach of fiduciary duty against Appellees for allegedly providing materially misleading information in quarterly plan statements sent to Martinez regarding his beneficiary designations after he remarried. For the reasons below, we AFFIRM.

I

Martinez worked as an electrical engineer for Entergy and its corporate predecessors from 1967 until his retirement in 2003. During that time, he participated in the Savings Plan, which consists of Entergy's employee and retiree 401k accounts. Entergy is the Savings Plan sponsor, and Entergy Corporation Employee Benefits Committee (the "Committee") is the Savings Plan administrator (collectively, the "Entergy Appellees"). T. Rowe Price Trust Company ("T. Rowe Price") is the Savings Plan trustee.

In 2010, eight years after the death of Martinez's wife, to whom he was married from the start of his employment at Entergy, Martinez named their four children as his designated beneficiaries under the Savings Plan. He did so by signing and submitting a beneficiary designation form to Entergy. Per ERISA, the form instructed that, if Martinez were to remarry after submitting the form, his beneficiary designation would be revoked unless he updated the form accordingly after remarriage.[1] *See* 29 U.S.C. § 1055(a)(2).

---

[1] The relevant section in the beneficiary designation form, entitled "Notice of Spouse's Death Benefit," reads:

> If you are married, your entire vested account in the plan will be paid to your surviving spouse after you die, unless you designate someone else as your primary beneficiary and your spouse consents, by completing the Consent of Spouse section of this form. Your spouse's signature must be notarized. If you become married or marry a different person after you

No. 24-30583

Effectuating said update would require Martinez's new spouse to submit a spousal waiver form relinquishing her beneficiary status under Martinez's Savings Plan account. *See id.* § 1055(2)(A)(i). Language informing Martinez of this policy—that marriage voids a previous beneficiary designation absent a spousal waiver—was also provided to him in the official document of the Savings Plan ("Plan Document")[2] and numerous summary plan descriptions.[3]

In 2014, eleven years after retiring from Entergy, Martinez married Kathleen Mire. Both before and after this second marriage, Martinez was receiving quarterly plan statements from T. Rowe Price with information

_____

sign this form, be sure to update this form because a later marriage will automatically revoke your prior beneficiary designation.

[2] The Plan Document, in defining "beneficiary," states:

A Member may, prior to termination of his employment, designate a Beneficiary or multiple or contingent Beneficiaries to whom distribution of his interest in the Trust Fund shall be made in the event of his death prior to the full receipt thereof; provided, however, that in the event a Participant or former Participant is married, such Beneficiary shall be deemed to be the Participant's or former Participant's surviving spouse. The Member may elect to change or revoke his designated Beneficiary at any time; provided, however, that, except as otherwise permitted by Code § 417(a)(2), such election by a Participant or former Participant shall not be effective unless such surviving spouse provides written consent which acknowledges the effect of such election and is witnessed by a Plan representative or a notary public.

[3] During his participation in the Savings Plan, Martinez received at least nine separate summary plan descriptions, each detailing the impact of marriage on a prior beneficiary designation under the Savings Plan. For example, the 2016 summary plan description states: "If you marry, your spouse automatically becomes your beneficiary, regardless of your previous designation, unless you provide your spouse's notarized signature on the Savings Plan of Entergy Corporation and Subsidiaries Designation of Beneficiary Form."

about his investments under the Savings Plan.[4] These statements listed Appellants as Martinez's beneficiaries—as he provided in his beneficiary designation form—and did not reference the policy that marriage nullifies a prior beneficiary designation absent a spousal waiver. In 2021, Martinez passed away from injuries sustained in an auto accident, survived by his second wife Mire and Appellants, his four adult children. At the time of his death, Martinez's Savings Plan account contained a balance of approximately three million dollars. During Martinez's lifetime, Mire never executed a spousal waiver regarding her status as his beneficiary after they became married. Accordingly, as required by ERISA, the Committee directed T. Rowe Price to distribute Martinez's remaining Savings Plan funds to Mire after his death. *See id.* § 1055(a)(2).

Appellants objected to this decision. After exhausting all avenues of administratively challenging the proper payee of the funds, they resorted to legal action. Appellants first sued Mire in September 2022. That case was dismissed with prejudice in July 2023 pursuant to an undisclosed settlement agreement. Appellants then sued Entergy, the Committee, and T. Rowe Price (collectively, "Appellees") in October 2023. In the operative complaint, Appellants assert a breach of fiduciary duty claim under ERISA, alleging that Appellees "exercised discretionary authority over different aspects of the Entergy Savings Plan and are co-fiduciaries under ERISA law." Appellants further claim that Appellees breached their purported duty "to not misrepresent plan provisions" because—despite that Appellees allegedly knew Martinez had remarried in 2014—the quarterly statements

---

[4] Appellants allege that T. Rowe Price issued at least fifty quarterly plan statements to Martinez after he filed his beneficiary designation form, and that twenty-five of those statements were issued after his marriage to Mire.

confirmed Martinez's designation of his children as his beneficiaries and did not inform him that his second marriage invalidated that designation.

The Entergy Appellees and T. Rowe Price filed separate motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the district court granted those motions in August 2024. The court reasoned that Entergy and T. Rowe Price could not be liable for breach of fiduciary duty because neither party exercised the requisite discretionary authority over management of the Savings Plan and, thus, they were not fiduciaries. Moreover, though it was uncontested that the Committee held fiduciary status, the court found that Appellants' claim that the Committee had breached its fiduciary duty failed as a matter of law. It explained that, since the Committee "accurately relayed ERISA provisions regarding legal beneficiaries and election of spousal waivers" to Martinez in the Plan Document, beneficiary designation form, and summary plan descriptions, the Committee had complied with its fiduciary duty.[5]

The district court issued a judgment concurrently with its order granting the motions to dismiss. Appellants now appeal from that judgment, contending that the district court erred by ruling that (1) Entergy and T. Rowe Price were not fiduciaries under ERISA,[6] and (2) Appellants failed to state a breach of fiduciary duty claim against the Committee.

---

[5] The court rejected an additional basis asserted by Appellees for dismissal: that Appellants' breach of fiduciary duty claim was actually a claim for plan benefits in disguise, and therefore improper.

[6] Insofar as Appellants claim that the district court erred by concluding that the Committee was not a fiduciary, that contention misrepresents the district court's order. The court noted that the parties *did not* contest that the Committee was a fiduciary, explaining that "the Committee possesses the functions of a fiduciary in both the Savings Plan and Summary Plan Descriptions." The court observed that the parties disagreed only as to whether Entergy and T. Rowe Price were fiduciaries; thus, the court's holding on fiduciary status pertained to those two defendants only. On appeal, the Entergy Appellees

No. 24-30583

## II

"We review orders on Rule 12(b)(6) motions to dismiss for failure to state a claim under the *de novo* standard of review." *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024) (citing *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021)). The operative complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 520 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing an appeal from the motion-to-dismiss stage, "[w]e accept all well-pleaded factual allegations as true and interpret the complaint in the light most favorable to the plaintiff." *Id.* (quoting *U.S. ex rel. Spicer v. Westbrook*, 751 F.3d 354, 365 (5th Cir. 2014)). However, "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' cannot establish facial plausibility." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see McKay*, 117 F.4th at 746 (stating that, in reviewing orders on Rule 12(b)(6) motions to dismiss, "we must accept all facts in the complaint as true, but do not accept conclusory allegations, unwarranted factual inferences, or legal conclusions")).

## III

A threshold issue when examining a breach of fiduciary duty claim in the ERISA context is whether the defendant qualifies as an ERISA fiduciary. *Pegram v. Herdrich*, 530 U.S. 211, 222–23 (2000); *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1026–27 (5th Cir. 2015). Appellants

―――――――――――――――――――

maintain their position that the Committee is the Savings Plan "administrator and fiduciary." Therefore, we proceed with a review of the district court's ruling on whether Entergy and T. Rowe Price, not the Committee, were fiduciaries under ERISA.

argue the district court erred by finding that they had not sufficiently pleaded that Entergy and T. Rowe Price were fiduciaries under ERISA. We disagree.

Under ERISA, an entity can become a fiduciary if it (1) is named or designated fiduciary "in the plan instrument," 29 U.S.C. § 1102(a)(2), or (2) functions as a fiduciary by exercising "any discretionary authority or discretionary control" over management of the plan or disposition of assets within the plan, *id.* § 1002(21)(A). When evaluating whether a party is a fiduciary, we "focus on the specific role the purported fiduciary played as relevant to the claim at hand." *Humana Health Plan*, 785 F.3d at 1027; *see also Pegram*, 530 U.S. at 226 (assessing ERISA fiduciary status at the time of "the action subject to complaint"). As neither Entergy nor T. Rowe Price is a named fiduciary in any instrument of the Savings Plan, the only route to establishing fiduciary status for those parties is through demonstrating their exercise of discretionary control over the plan. *See* 29 U.S.C. § 1002(21)(A).

A

Appellants claim that their operative complaint "contains specific and detailed factual allegations" clearly demonstrating that Entergy possessed the level of discretionary authority required for fiduciary status. But far from specific and detailed, the referenced paragraph in the complaint merely alleges, in conclusory fashion, that Entergy "retained authority and discretion over the manner and methods of communicating with plan participants," despite the Committee having been established as the plan administrator. Notably, the Plan Document expressly states that *the Committee* is responsible for communications with plan participants or their beneficiaries.[7] Appellants point to no provision of the Plan Document, nor

---

[7] The Plan Document, beneficiary designation form completed by Martinez, and summary plan descriptions were filed as attachments to the Entergy Appellees' motion to dismiss. On review of the district court's grant of that motion, we may appropriately

any other plan instrument, bolstering their claim that Entergy retained control of, or the responsibility for, methods of communicating with plan participants or beneficiaries regarding the Savings Plan. Thus, we agree with the district court that the referenced allegations are conclusory and factually unsupported.

The lack of factual support regarding Entergy's alleged authority over plan-related communications likewise undermines Appellants' claim that Entergy exhibited discretionary control by failing to alert Martinez that the quarterly statements—which were prepared and sent to him by T. Rowe Price—did not outline the surviving spouse beneficiary provision of the Savings Plan. Even taken in a light most favorable to Appellants, these bare allegations do not establish facial plausibility. *See Snow Ingredients*, 833 F.3d at 520.

B

Appellants' contention that they adequately pleaded the existence of fiduciary status as to T. Rowe Price, the Savings Plan trustee, fares no better. The complaint alleges that T. Rowe Price was a fiduciary because it was responsible for producing and sending the quarterly statements to Martinez, and because it had discretionary control over "the format and contents of the information communicated" in those statements. Like their claims regarding Entergy, Appellants' insistence that T. Rowe Price exhibited the referenced control is conclusory and devoid of factual support. The Plan Document

———————————

consider these documents because they are referenced in the operative complaint and are significant to the breach of fiduciary duty claim asserted. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007))).

explicitly states the role of the Savings Plan trustee, with no mention of the trustee having discretionary authority over the information contained in quarterly statements. Indeed, the Plan Document limits the responsibilities of the trustee to "the investment and safekeeping of the assets of the Trust," and it makes clear that the trustee "shall have no responsibility for the operation or administration of the Plan."

And, in any event, federal regulations pertaining to ERISA cut against Appellants' assertion that T. Rowe Price's preparation and dissemination of quarterly statements was sufficient to render fiduciary status. Specifically, the United States Department of Labor addressed the question of whether "persons who have no power to make any decisions as to plan policy, interpretations, practices[,] or procedures, but who perform" one or more of the functions enumerated in the regulation, are considered fiduciaries. 29 C.F.R. § 2509.75-8, at D–2. The list of functions provided in the regulation includes the "[p]reparation of employee communications material" and the "[p]reparation of reports concerning participants' benefits." *Id.* The answer is clear: "[a] person who performs purely ministerial functions," such as the above-mentioned tasks, "is not a fiduciary because such person does not have discretionary authority or discretionary control" regarding management of the plan or disposition of plan assets. *Id.*

Here, Appellants argue that T. Rowe Price operated in a fiduciary capacity by performing tasks that fall into the bucket of "ministerial functions" that the regulation deems insufficient for fiduciary status— namely, the preparation and dissemination of reports to Martinez concerning his investments under the Savings Plan. *See id.* Appellants' allegation that the quarterly statements "misled" Martinez by displaying his children as his beneficiaries is immaterial to the relevant inquiry of whether T. Rowe Price's creation and circulation of the statements constituted "discretionary control" such that the trustee was elevated to a fiduciary. 29 U.S.C.

§ 1002(21)(A). In light of the regulation's guidance that the trustee's alleged activities do not meet the bar for fiduciary status, and absent any caselaw cited by Appellants to the contrary, we agree with the district court that Appellants failed to plausibly plead that T. Rowe Price acted as a fiduciary.

Having properly determined that neither Entergy nor T. Rowe Price were fiduciaries under ERISA, the district court did not err by dismissing those parties from the suit.

## IV

That leaves the issue of whether the district court erroneously rejected Appellants' claim that the Committee, which the Entergy Appellees do not dispute is a fiduciary, breached its fiduciary duty.

While our court has not defined a set of elements required to state a claim for breach of fiduciary duty under ERISA, the district court turned to the Third Circuit for an instructive legal framework. Therein, to state a claim for breach of fiduciary duty, an ERISA plaintiff must establish that (1) the fiduciary-defendant made "affirmative misrepresentations or failed to adequately inform plan participants and beneficiaries"; (2) the misrepresentation or inadequate disclosure was material; and (3) the plaintiff detrimentally relied on the misrepresentation or inadequate disclosure. *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 228 (3d Cir. 2009) (quoting *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W. v. Skinner Engine Co.*, 188 F.3d 130, 148 (3d Cir. 1999)).

To be sure, our circuit has previously stated that, "[t]o establish a claimed breach of fiduciary duty, an ERISA plaintiff must prove a breach of a fiduciary duty and a prima facie case of loss to the plan." *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 237 (5th Cir. 1995) (citing *Roth v. Sawyer–Cleator Lumber Co.*, 16 F.3d 915, 917 (8th Cir. 1994)). This approach

leaves the requirements for proving a breach open to interpretation of the "[p]rudent man" standard of care set forth in the applicable statute. 29 U.S.C. § 1104(a)(1)(B); *see McDonald*, 60 F.3d at 237. However, although neither Appellants nor the Entergy Appellees challenge the district court's application of the Third Circuit's approach, we need not reach the question of whether that test must be formally adopted here.

We have recognized that a plan participant has a duty to inform himself of plan provisions, and that fiduciaries are not liable for a participant's confusion about plan terms for which he has not inquired about. *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1299 (5th Cir. 1995) ("[A]bsent a specific participant-initiated inquiry, a plan administrator does not have any fiduciary duty to determine whether confusion about a plan term or condition exists." (citing *Electro-Mech. Corp. v. Ogan*, 9 F.3d 445, 451–52 (6th Cir. 1993))). "It is only after the plan administrator does receive an inquiry that it has a fiduciary obligation to respond promptly and adequately in a way that is not misleading." *Id.* Additionally, in the relevantly instructive context of ERISA estoppel, we have observed that a plan participant cannot reasonably rely on information contained in informal documents in the face of unambiguous terms provided in the official instrument of the plan. *Mello v. Sara Lee Corp.*, 431 F.3d 440, 446–47 (5th Cir. 2005).

Here, Appellants contend that the Committee "made material misrepresentations and failed to provide accurate information" to Martinez "about the impact of his remarriage on his beneficiary designations." But this statement belies the fact that the Plan Document and at least nine separate summary plan descriptions, all of which Martinez received, accurately disclosed the effect of marriage on a Savings Plan participant's prior beneficiary designation. Even more, the beneficiary designation form that Martinez executed to name his children as his beneficiaries included

language—next to a heading titled "Notice of Spouse's Death Benefit" and located directly above the beneficiary designation space—clearly detailing the plan's surviving spouse beneficiary policy.[8]

Appellants hang their hat on the one set of informal documents issued to Martinez that did not reiterate the surviving spouse beneficiary policy: the quarterly plan statements distributed by T. Rowe Price. They allege that a material misrepresentation (or a failure to adequately inform) is evidenced by the Committee's purported knowledge that the quarterly statements listed Martinez's children as his designated beneficiaries but did not alert him that this designation would be invalidated by a surviving spouse absent the required waiver.

Appellants focus on the fact that the quarterly statements did not re-state the surviving spouse beneficiary policy, although Martinez was apprised of the policy in every other plan-related document he received. This suggests the sort of misunderstanding about a plan term or condition by a plan member for which this circuit has found that administrators do not have a fiduciary duty to proactively address. *Switzer*, 52 F.3d at 1299. That duty is not

---

[8] Indeed, the operative complaint concedes that at least the summary plan descriptions provided Martinez with notice that "remarriage would invalidate his designation of beneficiaries," but argues that such notice was inadequate because it appeared in "buried boilerplate language." But as our sister circuits have acknowledged, "one statutory goal of ERISA is to [e]nsure that every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." *Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Workers, AFL-CIO v. Murata Erie N. Am., Inc.*, 980 F.2d 889, 907 (3d Cir. 1992) (internal quotation omitted); *see also Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 820 (7th Cir. 2010) (citing *Murata* for the same principle). We cannot say that the Committee departed from this objective, notwithstanding Appellants' contention that the summary plan descriptions were "lengthy," given that the summaries accurately conveyed the policy on marriage and spousal waivers as it pertains to beneficiaries. Martinez also received clear notice of the same policy in the short, two-page beneficiary designation form that he signed and submitted, and in the Plan Document itself.

triggered until the plan member makes an inquiry. *Id.* Here, despite alleging that Martinez received at least twenty-five quarterly statements after his second marriage, Appellants make no allegation that Martinez ever inquired about the impact of his remarriage on his listed beneficiaries—an impact that was plainly stated in the Plan Document and summary plan descriptions he received, as well as the beneficiary designation form he completed and turned in. Further, Appellants contention that it was reasonable for Martinez to have relied on the quarterly statements "to believe that his designations were valid" does not tip the scale in their favor considering that the nullifying effect of his remarriage on those designations was unambiguously stated in the Plan Document, the official instrument of the Savings Plan. *See Mello*, 431 F.3d at 446–47.[9]

Therefore, because Appellants' have not sufficiently pleaded that the Committee conveyed a material misrepresentation or failed to provide

---

[9] Appellants' reliance on *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407 (5th Cir. 2003), to strengthen their claim for misrepresentation is misplaced. That case presented the distinct question of whether ERISA imposes a duty on a plan administrator to truthfully disclose, upon inquiry from plan members or beneficiaries, whether it is considering amending the plan. *Id.* at 409. In discussing an employer's duties regarding future plan changes, the panel noted that, "an employer, if it chooses to communicate about the future of a participant's plan benefits, has a fiduciary duty to refrain from misrepresentations." *Id.* at 424. But ultimately, in affirming the district court's finding of no material misrepresentation, the panel explained that the administrator "had no affirmative duty to communicate the status of its internal deliberations regarding a possible plan change," and the administrator did not materially misrepresent the prospect of a change when it responded to the plaintiffs' inquiry by saying that no new plan was in the pipeline. *Id.* at 432. Here, the issue does not pertain to any contemplated amendments to the Savings Plan, and Martinez made no inquiry to Appellees, making this case distinguishable from *Schlumberger*. *See id.* at 409. Further, the quarterly plan statements' display of the beneficiaries that Martinez himself listed on his beneficiary designation form is a far cry from the alleged misrepresentation in *Schlumberger*—an administrator's affirmative misstatement in response to plan member inquiries. *See id.* at 409.

No. 24-30583

adequate plan information, the district court did not err by dismissing their claim for breach of fiduciary duty against the Committee.[10]

## V

In sum, Entergy and T. Rowe Price were properly dismissed because they were not acting as fiduciaries under ERISA. And Appellants' breach of fiduciary duty claim against the Committee fails as a matter of law because the Committee accurately disclosed the policy that marriage voids a plan member's prior beneficiary designation unless a spousal waiver is executed. Having not received a spousal waiver from Mire, the Committee followed the mandate of ERISA by directing that Martinez's Savings Plan proceeds be distributed to Mire as his surviving spouse. We AFFIRM.

---

[10] On appeal, the parties also dispute whether the district court erred by ruling that Appellants' breach of fiduciary duty claim should not have been dismissed as an improper claim for plan benefits in disguise. Given our affirmance of the court's grant of Appellees' motions to dismiss on the grounds discussed herein, we need not reach this issue.