# United States Court of Appeals for the Fifth Circuit

---

No. 24-10803

---

United States Court of Appeals
Fifth Circuit

**FILED**

August 29, 2025

Lyle W. Cayce
Clerk

Jacqueline Jones,

*Plaintiff—Appellant*,

*versus*

City of Dallas, Texas,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-1477

---

Before Jones and Graves, *Circuit Judges*, and Rodriguez, *District Judge*.[*]

Per Curiam:[†]

Jacqueline Jones, an African-American female and disabled veteran, worked for almost twenty years with the City of Dallas. When the City

---

[*] United States District Judge for the Southern District of Texas, sitting by designation.

[†] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

terminated her employment, she filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC), which ultimately issued a right-to-sue letter. Jones then sued the City, alleging claims of retaliation and unequal pay under Title VII, as well as claims based on the Americans with Disabilities Act (ADA) for failure to accommodate and retaliation for seeking accommodations. The district court granted summary judgment in favor of the City on the grounds that Jones had failed to exhaust administrative remedies as to all claims except for her unequal pay claim under Title VII, and as to the exhausted claim, that she failed to establish a prima facie case of discrimination.

For the following reasons, we AFFIRM.

## I.

## A.

In September 2000, the City hired Jacqueline Jones to work as a Management Assistant in the City Manager's Office. Her starting salary was $40,934.28.

The City awarded salary increases based on the nature of the position and an employee's performance reviews, with a minimum-maximum salary range applicable to each position. When an employee changed jobs within the City, the employee maintained her previous salary, unless it was below the minimum amount for the new role. Employees also earned merit-based increases based on annual performance reviews, with the review affecting the percentage increase. In some years, due to budgetary constraints, the City kept salaries unchanged.

In September 2006, the City reassigned Jones to the position of Senior Contract Compliance Administrator. Over the years, Jones received "Partially Successful," "Fully Successful," and "Highly Successful"

reviews, leading to increases of about 2% to 3% per year. By 2016, her yearly salary had increased to just over $59,000.

In that year, Jones initiated her first lawsuit against the City, *Jones v. City of Dallas, Texas*, Civil Case No. 3:16-2303 (N.D. Tex., filed Aug. 9, 2016) (*Jones I*). She alleged that the City underpaid her and failed to promote her based on her race and gender in violation of Title VII and the Equal Pay Act. After a retaliation claim was dismissed at the summary judgment stage, the case went to trial in 2018, and a jury rendered a verdict in the City's favor.

In August 2018, the City's Office of Homeless Solutions re-organized and posted an open position for Contracts Solution Specialist. Jones applied. Erika Johnson, the supervisor for the position, initially told Jones that her application had been rejected, but in October 2018, reassigned her to the position. Jones's salary of about $61,000 exceeded the minimum amount for the new position and, as a result, remained unchanged.

Around the same time, the City also reassigned Lori Davidson, a white female, to the role of Contract Solutions Specialist. Jones protested that she should receive the same salary as Davidson, who maintained her salary of about $83,000. According to Jones, her supervisor (Johnson) initially promised her a 3% raise, but later rescinded it, explaining only that Jones had confused reclassification with promotion.

Jones identifies Davidson as a comparator for her unequal pay claim. The City hired Davidson in November 2003 as a Senior Contract Compliance Administrator, at a salary of $48,800. Both women had earned a Master's degree in public administration, and Davidson was also a licensed certified public accountant and held a law degree from the University of Texas School of Law. In 2011, the City reclassified Davidson to Coordinator III, followed in 2018 by the reclassification to Contract Solutions Specialist.

Monica Hardman, the Managing Director of the Office of Homeless Solutions, considered Davidson a subject matter expert in her area of work. And Davidson served as a staffer on various boards and commissions within the City, a responsibility that Jones did not share. During the same timeframe that Jones's annual reviews led to her receiving salary increases of 2% to 3%, Davidson received reviews of "Highly Successful," "Exceptional," "Superior," and "Distinguished" (the highest possible), resulting in annual increases of 4% to 8%. Those increases compounded over the years. As result, by 2018, the City paid Davidson a salary of $83,005.02.

Around March 2019, the City placed Anita Crethers, an African-American female, in the position of Contract Solutions Specialist. She also held a Master's degree in public administration and had seven years of experience, three of which were within the Office of Homeless Solutions. Although she held the same title as Jones and Davidson, the City paid her $47,000, which was even less than Jones's salary.

In May 2019, the United States Department of Housing and Urban Development notified the City of an expenditure shortfall that could result in HUD recapturing unspent grant funds. Jones served as the lead project manager for the specific contracts at issue. The City conducted a review and concluded that Jones and her supervisor (Johnson) bore responsibility for the expenditure shortfall, an issue that the City deemed "very serious." Jones testified in deposition that she did not bear "responsibility to monitor spending under the contracts" that she supervised. She also recalled a similar situation where grant money was not disbursed to homeless providers due to a "defective computer program," and the City did not discipline or terminate the employees found responsible.

In June 2019, the City terminated both Jones and Johnson, ostensibly based on the shortfall in expenditures.

No. 24-10803

In January 2020, Jones filed a charge of discrimination with the EEOC, alleging the following claims under Title VII and the ADA:

> PERSONAL HARM: Coworker, Lori Davison (White) and I were both promoted to Contract Solutions Specialists in on or around August of 2018. I complained to HR, Nina Arias (on or around September 2019) about the unequal pay and nothing was done. Lori Davidson was being paid $86k and I was being paid $61,171 and we were in the same positions. I also asked and submitted multiple of reasonable accommodation requests and I received no response, no interactive process took place, and nothing was done. I was terminated in June 14th, 2019 in retaliation because of my complaints of unequal pay and requests for reasonable accommodations.

> DISCRIMINATION STATEMENT: I believe that I was discriminated against because of my Race (African American/Black), In violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I was retaliated against In violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended. I believe that I was discriminated against based on disability, in violation of the Americans with Disabilities Act of 1990. I believe that I was retaliated against in violation of Section 503(a) of the Americans with Disabilities Act of 1990, as amended.

Four months later, the EEOC issued Jones a right to sue letter, authorizing her to bring suit against the City under both statutes.

Jones then initiated this lawsuit. She alleged three causes of action. First, she alleged that the City discriminated against her based on race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq*. In particular, she alleged that the City "intentionally discriminated against [her] because of her race by exhibiting bias against Plaintiff, treating Plaintiff in a discriminatory and harassing manner compared with her white peers and

refusing to grant equal and fair pay, and discharging Plaintiff." Second, she alleged that the City retaliated against her for filing *Jones I*, also in violation of Title VII. According to Jones, based on her prosecution of *Jones I*, the City "intentionally discriminated against [her] . . . by exhibiting bias against Plaintiff, treating Plaintiff in a discriminatory and harassing manner compared with her peers, and discharging Plaintiff." And third, Jones alleged that the City discriminated against her and retaliated against her based on her service-related disabilities, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12112.

B.

As the procedural history before the district court affects the review of Jones's claims on appeal, we provide the following detailed summary.

The City moved for summary judgment, and the district court referred the matter to a magistrate judge. In its motion, the City argued that Jones had failed to exhaust administrative remedies as to all of her Title VII claims, except for a claim of racial discrimination based on unequal pay. And as to this exhausted claim, the City argued that Jones failed to establish a prima facie case because Jones and Davidson were not similarly situated and the latter could not serve as an appropriate comparator. In addition, the City contended that the summary judgment evidence conclusively demonstrated that legitimate, non-discriminatory reasons explained the disparity in salary. As to the ADA, the City also relied on the exhaustion doctrine to challenge Jones's failure-to-accommodate claim, but not her retaliation claim. In addition, as to all ADA claims, the City argued that it was entitled to summary judgment based on the record.

In her response to the motion, Jones addressed only the substantive merit of her discrimination and retaliation claims under the ADA and Title VII. She was silent as to exhaustion. Similarly, regarding her pay disparity

claim under Title VII, she offered virtually no argument concerning whether Davidson could serve as a comparator, whether the City offered legitimate, non-discriminatory reasons for the pay differential, or whether the City's stated reasons were pretextual.

The magistrate judge issued recommended findings and conclusions, recommending that the district court grant summary judgment because Jones had failed to exhaust administrative remedies as to all of her claims, save for the Title VII unequal pay claim. In doing so, the magistrate judge sua sponte considered whether Jones had exhausted her ADA retaliation claim, concluding that she had not. As to these unexhausted claims, the magistrate judge, in the alternative, analyzed their substantive merit and determined that the City was entitled to summary judgment.

Turning to the unequal pay claim—i.e., the only exhausted cause of action—the magistrate judge decided that Jones failed to establish a prima facie case because she and Davidson were not similarly situated. Alternatively, the magistrate judge found that the City "satisfied its burden of production to articulate legitimate, non-discriminatory reasons for why Davidson was paid more than Jones, and Jones does not rebut those reasons[.]"

The magistrate judge informed the parties of their right to object to the report and recommendation within 14 days, and that the failure to file proper objections would "bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error."

Jones timely objected to the magistrate judge's findings and recommendations. She argued at length that she had exhausted her administrative remedies on her Title VII claims. As to the exhaustion of her ADA claims, however, she included only one paragraph:

The Magistrate erred in finding that Jones failed to exhaust administrative remedies under the ADA. (Doc. No. 46 at p.10) The Magistrate cites a flurry of unpublished decisions, but again repeats his error of second guessing the EEOC intake person for not listing out every separate disability or request for accommodations. Op. pp. 11-12. Obviously, the EEOC was alerted to the issue, and could have followed up with Jones had it desired additional information after beginning its investigation. The Fifth Circuit long ago rejected the Magistrate's approach. *See, Sanchez*, 431 F.2d at 465 (rejecting the notion that: "every particular fact alleged in the judicial complaint must have a direct counterpart in the charge of discrimination" in favor of a libel scope analysis). In any event, Plaintiff should not be barred from this Court due to the EEOC's failure to spell out each attempt to get an accommodation, which efforts continued within 300 days of her termination. Thus, the Magistrate's recommendation with respect to Plaintiff's ADA claims must be rejected, and Plaintiff allowed to try her claims.

The district court granted summary judgment as to all causes of action. First, the district court addressed the claims that the magistrate judge found not exhausted. As to these claims, the district court concluded that Jones had "waived" her arguments by not presenting them to the magistrate judge and presenting them for the first time in her objections. The district court continued, "[e]ven if not waived, the court finds no error in the magistrate judge's findings and conclusions regarding this issue." Given these conclusions, the district court explained that "it need not address the alternative reasons in the Report for dismissing the unexhausted claims or Plaintiff's objections to these alternative reasons."[1]

---

[1] In her opening brief, Jones spends considerable time challenging the magistrate judge's alternative findings regarding the substantive merits of the unexhausted claims. But as the district court expressly declined to reach these alternative findings, they do not form

No. 24-10803

Turning to the unequal pay claim under Title VII, the district court explained that Jones failed to object to the magistrate judge's conclusion that no prima facie case existed because Davidson was not an appropriate comparator. The district court found that Jones had thus "waived" the issue, "constitut[ing] an independent basis for the court to grant the City's Motion and dismiss this claim as recommended by the magistrate judge."

The district court concluded the order by stating that "[h]aving considered the City's Motion, the briefs of the parties, record in this case, and Report, and having conducted a de novo review of that portion of the Report to which objection was made by Plaintiff, the court determines that the findings and conclusions of the magistrate judge are correct, and accepts them as those of the court *as supplemented by this order*."

Jones timely appealed the district court's ruling.

## II.

As explained, the district court granted summary judgment as to all of Jones's causes of action.

We typically afford de novo review to such a ruling, "construing all facts and inferences in the light most favorable to the nonmoving party." *Navarre v. AIG Prop. Cas. Co.*, 142 F.4th 814, 816 (5th Cir. 2025) (citation omitted). An appellant, however, can forfeit de novo review by not properly preserving her arguments in the district court. For example, when a party fails to present an argument to the magistrate judge, receives an adverse recommendation from the magistrate judge on the issue, and then seeks to raise an argument for the first time through an objection, the argument is

---

part of the judgment and are not properly before this Court. *See Kyles v. Garrett*, 353 F. App'x. 942, 944—45 (5th Cir. 2009) (determining that a magistrate judge's recommendations that the district court did not adopt were not proper issues for appeal).

forfeited altogether from further consideration, even on appeal. *Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024); *see also Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852 (5th Cir. 1998) ("Litigants may not, however, use the magistrate judge as a mere sounding-board for the sufficiency of the evidence."). Also, a party that presents an argument to the magistrate judge, but then fails to object to a recommended finding or conclusion that the district court then adopts, may appeal the ruling on the issue only under plain error review. *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015) ("Plain error review applies where, as here, a party did not object to a magistrate judge's findings of fact, conclusions of law, or recommendation to the district court despite being served with notice of the consequences of failing to object." (cleaned up)). In such circumstances, if the party fails to argue on appeal that the district court committed plain error, the party forfeits the issue. *Sneed v. Austin Indep. Sch. Dist.*, 50 F.4th 483, 490 (5th Cir. 2022). And of course, "[a]n appellant abandons all issues not raised and argued in its *initial* brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (emphasis in original).

With these principles in mind, we turn to Jones's claims.

## A.

We address first Jones's failure-to-accommodate claim under the ADA and her Title VII claims other than for unequal pay. The district court concluded that Jones failed to exhaust her administrative remedies as to these causes of action.

On these claims, and based on *Shambaugh*, 91 F.4th at 369, Jones forfeited appellate review. The City moved for summary judgment on these claims based, in part, on the exhaustion requirement. In her response, Jones was silent on the issue. The magistrate judge noted the lack of opposition on the matter and recommended that the district court conclude that Jones did

not exhaust administrative remedies on these claims. In her objections, Jones for the first time addressed the issue of exhaustion. But the district court correctly concluded that she had forfeited the arguments by not raising them in her response to the summary judgment motion. And *Shambaugh* instructs that she cannot now present the matter to this Court.

B.

The Court next considers the matter of ADA retaliation. The district court concluded that Jones failed to exhaust administrative remedies on this cause of action.

On this issue, *Shambaugh* does not control because the City concedes that it did not request summary judgment as to ADA retaliation based on exhaustion. Jones had no cause to argue the matter in her response to the City's summary judgment motion, rendering *Shambaugh* inapplicable.

The magistrate judge sua sponte analyzed and determined that Jones failed to exhaust her ADA retaliation claim. Normally, a district court can only dismiss a claim sua sponte after giving the adverse party notice and an opportunity to respond. *Carver v. Atwood*, 18 F.4th 494, 498 (5th Cir. 2021). A magistrate judge's report and recommendation constitutes sufficient notice and opportunity, as the parties can submit objections to the recommended findings and conclusions. *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998).

Here, Jones filed objections, but she included only one paragraph supporting her argument that she exhausted administrative remedies under the ADA. Even when construed broadly, that paragraph contended only that Jones properly exhausted her ADA failure-to-accommodate claim. She made no reference to retaliation and presented no specific argument on such a claim. Federal Rule of Civil Procedure 72(b)(2) requires parties to assert "specific" written objections. Jones failed to do so as to her ADA retaliation

claim, and the district court adopted the magistrate judge's recommendation on this issue. Under these circumstances, this Court reviews the district court's ruling for plain error. *Ortiz*, 806 F.3d at 825.

On appeal, Jones compounds her failure by not challenging the district court's conclusion on this issue. Her argument before this Court is a verbatim repetition of the one-paragraph objection that she presented to the district court concerning exhaustion on her ADA claims. She challenges the district court's conclusion that she did not exhaust her failure-to-accommodate claim, but she does not reference retaliation in the paragraph or otherwise present a specific argument related to ADA retaliation. Just as she failed to plainly press her arguments in her objections to the district court, she has forfeited any argument by not clearly attacking the district court's findings on appeal. *See Cinel*, 15 F.3d at 1345.[2]

Still, even if Jones had properly challenged the issue of exhaustion on her ADA relation claim, that cause of action would nevertheless be subject to summary judgment based on the failure to exhaust administrative remedies. When determining if a litigant exhausted her administrative remedies before the EEOC, "the crucial element of a charge of discrimination is the factual statement contained therein[.]" *Melgar v. T.B. Butler Publ'g Co., Inc.*, 931 F.3d 375, 379 (5th Cir. 2019). The exhaustion requirement exists to ensure that "no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 467 (5th Cir. 1970).

---

[2] The City in its appellee's brief noted Jones's failure to present an issue regarding exhaustion of her ADA retaliation claim. In her reply brief, Jones does not argue otherwise and is again silent on the matter.

To determine whether a plaintiff has satisfied this requirement, a court engages in a "fact-intensive analysis" of the administrative charge. *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). The court focuses on the facts alleged in the charge, "constru[ing] the EEOC charge in its broadest reasonable sense and ask[ing] whether the claim can reasonably be expected to grow out of the charge of discrimination." *Ayorinde v. Team Indus. Servs., Inc.*, 121 F.4th 500, 508 (5th Cir. 2024) (citation omitted); *see also Melgar*, 931 F.3d at 378-379. The court looks "slightly beyond [the Charge's] four corners, [assessing] its substance rather than its label." *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021).

In the present matter, Jones's EEOC charge failed to exhaust her ADA retaliation claim because she alleged no specific facts for the EEOC or a court to analyze. She alleged only that she requested unspecified accommodations for an unspecified disability, and the City responded by firing her. Beyond these general statements, she offered no facts for the EEOC to investigate. In cases where this Court has concluded that an employee exhausted administrative remedies as to an ADA retaliation claim, the employee included some specificity within the charge. *See, e.g.*, *Williams v. Tarrant Cnty. Coll. Dist.*, 717 F. App'x 440, 445 (5th Cir. 2018) (involving a charge in which the employee specified that she requested an accommodation from two named individuals and provided a doctor's note in support but was denied the request at a meeting on a specified date). In contrast, Jones's EEOC charge contains no specific information about when or how she requested a reasonable accommodation, or from whom. The omissions prove fatal to her cause of action.

## C.

The Court turns now to Jones's Title VII unequal pay claim, which the parties agree she exhausted before the EEOC. On this claim, the district

court granted summary judgment on the grounds that she failed to present a prima facie case by not identifying an appropriate comparator, and alternatively because the summary judgment record conclusively established that non-discriminatory grounds explained the disparity in salary.

Ordinarily, this Court would consider these issues de novo. The district court determined, however, that Jones did not object to the magistrate judge's recommended conclusion that Jones had not identified an appropriate comparator. If so, the district court would have applied clear error review, and this Court would review for plain error. However, if a district court applies de novo review in evaluating a magistrate judge's recommendation, despite the party's failure to object, then so do we. *See Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017). In the end, however, the Court does not reach whether plain error or de novo review applies, as even under the standard more favorable to Jones, her claim still fails.

In a pay disparity claim under Title VII, when, as in the present case, no direct evidence of discrimination exists, the *McDonnell-Douglas* burden-shifting analysis controls. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). "A plaintiff establishes a prima facie case . . . when she shows that she is a member of a protected class who was paid less than a non-member for work requiring substantially the same responsibility." *Badgerow v. REJ Props., Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (citation and quotation marks omitted). Once the plaintiff presents a prima facie case, then the burden shifts to the employer to establish a non-discriminatory basis for the pay differential. *Mitchell v. Mills*, 895 F.3d 365, 370 n.4 (5th Cir. 2018). If the defendant satisfies this burden, then the plaintiff has the burden of producing evidence tending to show that the employer's stated reason is pretextual. *Taylor*, 554 F.3d at 523.

For purposes of presenting a prima facie case, the plaintiff must identify an appropriate comparator, who must be a co-worker from outside of the protected class whose employment circumstances are "nearly identical" to the plaintiff. *Taylor*, 554 F.3d at 522. Courts do not focus on the job title, but determine if the plaintiff and proffered comparator "performed work in a position requiring equal skill, effort, and responsibility under similar working conditions[.]" *Badgerow*, 974 F.3d at 617 (citation omitted) (affirming summary judgment when the plaintiff "fail[ed] to offer evidence showing that when she started as an AFA her job responsibilities and conditions were substantially similar to the job responsibilities and conditions of the senior male AFAs when they started"); *see also McElroy v. PHM Corp.*, 622 F. App'x. 388, 392 (5th Cir. 2015) (affirming summary judgment because the plaintiff was not similarly situated to her co-worker, even though "both performed similar duties while working together, [as] the summary-judgment evidence shows that [the proposed comparator] had greater responsibilities"); *Jackson v. Honeywell Int'l., Inc.*, 601 F. App'x. 280, 285 (5th Cir. 2015) (affirming summary judgment when plaintiff's proposed comparators were hired at different times and into different positions than the plaintiff).

Here, the record contains ample evidence demonstrating material differences in the career trajectories, education, and responsibilities of Davidson and Jones. Both women held Master's degrees, but only Davidson held a C.P.A. license and a law degree. The two women fulfilled the same responsibilities, but Davidson bore additional duties, such as a staffer for City boards and commissions. The extra duties required Davidson to regularly work 12-hour days, whereas Jones worked a traditional 8-hour day. In addition, only Davidson was recognized as a subject matter expert within her department. And only Davidson held a grant-funded position, which

No. 24-10803

generally received a higher salary than those paid through general taxpayer funds.

Given these material differences, Davidson represented an inappropriate comparator for purposes of Jones's Title VII unequal pay claim. As a result, Jones failed to establish a prima facie case to support this cause of action.[3]

### III.

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[3] The Court does not reach if a genuine issue of material fact existed as to whether the City offered legitimate, non-discriminatory reasons for the pay disparity, or whether those reasons were pretextual. *See Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 582 n.44 (5th Cir. 2020) (declining to address the second or third step of the *McDonnell-Douglas* analysis after the plaintiff failed to establish his prima facie case).